OPINION OF THE COURT
Kaye, J.
Plaintiff in this personal injury litigation, wishing to have his counsel privately interview a corporate defendant’s employees who witnessed the accident, puts before us a question that has generated wide interest: are the employees of a corporate party also considered "parties” under Disciplinary Rule 7-104 (A) (1) of the Code of Professional Responsibility, which prohibits a lawyer from communicating directly with a *368 "party” known to have counsel in the matter?[1] The trial court and the Appellate Division both answered that an employee of a counseled corporate party in litigation is by definition also a "party” within the rule, and prohibited the interviews. For reasons of policy, we disagree.
As alleged in the complaint, plaintiff was injured when he fell from scaffolding at a building construction site. At the time of the accident he was employed by DeTrae Enterprises, Inc.; defendant J.M. Frederick was the general contractor, and defendant Team I the property owner. Plaintiff thereafter commenced a damages action against defendants, asserting two causes of action centering on Labor Law § 240, and defendants brought a third-party action against DeTrae.
Plaintiff moved for permission to have his counsel conduct ex parte interviews of all DeTrae employees who were on the site at the time of the accident, arguing that these witnesses to the event were neither managerial nor controlling employees and could not therefore be considered "personal synonyms for DeTrae.” DeTrae opposed the application, asserting that the disciplinary rule barred unapproved contact by plaintiff’s lawyer with any of its employees. Supreme Court denied plaintiff’s request, and the Appellate Division modified by limiting the ban to DeTrae’s current employees.
The Appellate Division concluded, for theoretical as well as practical reasons, that current employees of a corporate defendant in litigation "are presumptively within the scope of the representation afforded by the attorneys who appeared [in the litigation] on behalf of that corporation.” (149 AD2d 94, 95.) Citing Upjohn Co. v United States (449 US 383), the court held that DeTrae’s attorneys have an attorney-client relationship with every DeTrae employee connected with the subject of the litigation, and that the prohibition is necessitated by the practical difficulties of distinguishing between a corporation’s control group and its other employees. The court further *369 noted that the information sought from employee witnesses could instead be obtained through their depositions.
In the main we disagree with the Appellate Division’s conclusions. However, because we agree with the holding that DR 7-104 (A) (1) applies only to current employees, not to former employees, we modify rather than reverse its order, and grant plaintiff’s motion to allow the interviews.[2]
We begin our analysis by noting that what is at issue is a disciplinary rule, not a statute. In interpreting statutes, which are the enactments of a coequal branch of government and an expression of the public policy of this State, we are of course bound to implement the will of the Legislature; statutes are to be applied as they are written or interpreted to effectuate the legislative intention. The disciplinary rules have a different provenance and purpose. Approved by the New York State Bar Association and then enacted by the Appellate Divisions, the Code of Professional Responsibility is essentially the legal profession’s document of self-governance, embodying principles of ethical conduct for attorneys as well as rules for professional discipline (see, Code of Professional Responsibility, Preliminary Statement, McKinney’s Cons Law of NY, Book 29, at 355). While unquestionably important, and respected by the courts, the code does not have the force of law (see, Matter of Weinstock, 40 NY2d 1, 6).
That distinction is particularly significant when a disciplinary rule is invoked in litigation, which in addition to matters of professional conduct by attorneys, implicates the interests of nonlawyers (see, S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437, 443). In such instances, we are not constrained to read the rules literally or effectuate the intent of the drafters, but look to the rules as guidelines to be applied with due regard for the broad range of interests at *370 stake. " 'When we agree that the Code applies in an equitable manner to a matter before us, we should not hesitate to enforce it with vigor. When we find an area of uncertainty, however, we must use our judicial process to make our own decision in the interests of justice to all concerned.’ ” (Id. [quoting Foley & Co. v Vanderbilt, 523 F2d 1357, 1360 (2d Cir, Gurfein, J., concurring)].)
DR 7-104 (A) (1), which can be traced to the American Bar Association Canons of 1908, fundamentally embodies principles of fairness. "The general thrust of the rule is to prevent situations in which a represented party may be taken advantage of by adverse counsel; the presence of the party’s attorney theoretically neutralizes the contact.” (Wright v Group Health Hosp., 103 Wash 2d 192, 197, 691 P2d 564, 567.) By preventing lawyers from deliberately dodging adversary counsel to reach — and exploit — the client alone, DR 7-104 (A) (1) safeguards against clients making improvident settlements, ill-advised disclosures and unwarranted concessions (see, 1 Hazard & Hodes, Lawyering, at 434-435 [1989 Supp]; Wolfram, Modern Legal Ethics § 11.6, at 613 [Practitioner’s ed 1986]; Leubsdorf, Communicating with Another Lawyer’s Client: The Lawyer’s Veto and the Client’s Interests, 127 U Pa L Rev 683, 686 [1979]).
There is little problem applying DR 7-104 (A) (1) to individuals in civil cases. In that context, the meaning of "party” is ordinarily plain enough: it refers to the individuals, not to their agents and employees (see, Gillers & Dorsen, Regulation of Lawyers: Problems of Law and Ethics, at 433 [2d ed 1989]). The question, however, becomes more difficult when the parties are corporations — as evidenced by a wealth of commentary, and controversy, on the issue (see, e.g., Wyeth, Talking to the Other Side’s Employees and Ex-Employees, 15 Litigation 8 [No. 4 Summer 1989]; Cpmment, Ex Parte Communications with Corporate Parties: The Scope of the Limitations on Attorney Communications with One of Adverse Interest, 82 Nw U L Rev 1274 [1988]; Miller & Calfo, Ex Parte Contact with Employees and Former Employees of a Corporate Adversary: Is it Ethical?, 42 Bus Law 1053 [1987]; Stahl, Ex Parte Interviews with Enterprise Employees: A Post-Upjohn Analysis, 44 Wash & Lee L Rev 1181 [1987]; American Bar Foundation Annotated Code of Professional Responsibility 336-337 [1979]; Kurlantzik, The Prohibition on Communication with an Adverse Party, 51 Conn BJ 136 [1977]).
*371 The difficulty is not in whether DR 7-104 (A) (1) applies to corporations. It unquestionably covers corporate parties, who are as much served by the rule’s fundamental principles of fairness as individual parties. But the rule does not define "party,” and its reach in this context is unclear. In litigation only the entity, not its employee, is the actual named party; on the other hand, corporations act solely through natural persons, and unless some employees are also considered parties, corporations are effectively read out of the rule. The issue therefore distills to which corporate employees should be deemed parties for purposes of DR 7-104 (A) (1), and that choice is one of policy. The broader the definition of "party” in the interests of fairness to the corporation, the greater the cost in terms of foreclosing vital informal access to facts.
The many courts, bar associations and commentators that have balanced the competing considerations have evolved various tests, each claiming some adherents, each with some imperfection (see generally, Annotation, Right of Attorney to Conduct Ex Parte Interviews with Corporate Party’s Nonmanagement Employees, 50 ALR4th 652 [1986] [collecting cases]). At one extreme is the blanket rule adopted by the Appellate Division and urged by defendants, and at the other is the "control group” test — both of which we reject. The first is too broad and the second too narrow.
Defendants’ principal argument for the blanket rule[3] — correlating the corporate "party” and all of its employees — rests on Upjohn v United States (449 US 383, supra). As the Supreme Court recognized, a corporation’s attorney-client privilege includes communications with low- and mid-level employees; defendants argue that the existence of an attorney-client privilege also signifies an attorney-client relationship for purposes of DR 7-104 (A) (1).
Upjohn, however, addresses an entirely different subject, *372 with policy objectives that have little relation to the question whether a corporate employee should be considered a "party” for purposes of the disciplinary rule. First, the privilege applies only to confidential communications with counsel (see, CPLR 4503), it does not immunize the underlying factual information — which is in issue here — from disclosure to an adversary (see also, Upjohn v United States, 449 US, at 395-396, supra). Second, the attorney-client privilege serves the societal objective of encouraging open communication between client , and counsel (see, Rossi v Blue Cross & Blue Shield, 73 NY2d 588, 592), a benefit not present in denying informal access to factual information. Thus, a corporate employee who may be a "client” for purposes of the attorney-client privilege is not necessarily a "party” for purposes of DR 7-104 (A) (1).
The single indisputable advantage of a blanket preclusion— as with every absolute rule — is that it is clear. No lawyer need ever risk disqualification or discipline because of uncertainty as to which employees are covered by the rule and which not. The problem, however, is that a ban of this nature exacts a high price in terms of other values, and is unnecessary to achieve the objectives of DR 7-104 (A) (1).
Most significantly, the Appellate Division’s blanket rule closes off avenues of informal discovery of information that may serve both the litigants and the entire justice system by uncovering relevant facts, thus promoting the expeditious resolution of disputes. Foreclosing all direct, informal interviews of employees of the corporate party unnecessarily sacrifices the long-recognized potential value of such sessions. "A lawyer talks to a witness to ascertain what, if any, information the witness may have relevant to his theory of the case, and to explore the witness’ knowledge, memory and opinion— frequently in light of information counsel may have developed from other sources. This is part of an attorney’s so-called work product.” (International Business Machs. Corp. v Edelstein, 526 F2d 37, 41 [citing Hickman v Taylor, 329 US 495].) Costly formal depositions that may deter litigants with limited resources, or even somewhat less formal and costly interviews attended by adversary counsel, are no substitute for such off-the-record private efforts to learn and assemble, rather than perpetuate, information.
Nor, in our view, is it necessary to shield all employees from informal interviews in order to safeguard the corporation’s interest. Informal encounters between a lawyer and an em *373 ployee-witness are not — as a blanket ban assumes — invariably calculated to elicit unwitting admissions; they serve long-recognized values in the litigation process. Moreover, the corporate party has significant protection at hand. It has possession of its own information and unique access to its documents and employees; the corporation’s lawyer thus has the earliest and best opportunity to gather the facts, to elicit information from employees, and to counsel and prepare them so that they will not make the feared improvident disclosures that engendered the rule.
We fully recognize that, as the Appellate Division observed, every rule short of the absolute poses practical difficulties as to where to draw the line, and leaves some uncertainty as to which employees fall on either side of it. Nonetheless, we conclude that the values served by permitting access to relevant information require that an effort be made to strike a balance, and that uncertainty can be minimized if not eliminated by a clear test that will become even clearer in practice.
We are not persuaded, however, that the "control group” test — defining "party” to include only the most senior management exercising substantial control over the corporation— achieves that goal. Unquestionably, that narrow (though still uncertain) definition of corporate "party” better serves the policy of promoting open access to relevant information. But that test gives insufficient regard to the principles motivating DR 7-104 (A) (1), and wholly overlooks the fact that corporate employees other than senior management also can bind the corporation. The "control group” test all but "nullifies the benefits of the disciplinary rule to corporations.” (Comment, Ex Parte Communications with Corporate Parties: The Scope of the Limitations on Attorney Communications with One of Adverse Interest, 82 Nw U L Rev 1274, 1288 [1988]; see also, Morrison v Brandeis Univ., 125 FRD 14, 16-17 [D Mass]; Massa v Eaton Corp., 109 FRD 312, 313-314 [WD Mich].) Given the practical and theoretical problems posed by the "control group” test, it is hardly surprising that few courts or bar associations have ever embraced it.[4]
By the same token, we find unsatisfactory several of the *374 proposed intermediate tests, because they give too little guidance, or otherwise seem unworkable. In this category are the case-by-case balancing test (see, B. H. v Johnson, 128 FRD 659 [ND 111]; Morrison v Brandeis Univ., supra), and a test that defines "party” to mean corporate employees only when they are interviewed about matters within the scope of their employment (Committee on Professional Ethics, Assn of Bar of City of NY, Opn No. 80-46 [1980]; Committee on Professional Ethics, Massachusetts Bar Assn. Formal Opn No. 82-7 [1982]). The latter approach is based on rule 801 (d) (2) (D) of the Federal Rules of Evidence, a hearsay exception for statements concerning matters within the scope of employment, which is different from the New York State rule (see, Loschiavo v Port Auth., 58 NY2d 1040; Kelly v Diesel Constr. Div., 35 NY2d 1).
The test that best balances the competing interests, and incorporates the most desirable elements of the other approaches, is one that defines "party” to include corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation’s "alter egos”) or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel. All other employees may be interviewed informally.
Unlike a blanket ban or a "control group” test, this solution is specifically targeted at the problem addressed by DR 7-104 (A) (1). The potential unfair advantage of extracting concessions and admissions from those who will bind the corporation is negated when employees with "speaking authority” for the corporation, and employees who are so closely identified with the interests of the corporate party as to be indistinguishable from it, are deemed "parties” for purposes of DR 7-104 (A) (1). Concern for the protection of the attorney-client privilege prompts us also to include in the definition of "party” the corporate employees responsible for actually effectuating the advice of counsel in the matter (see, Polycast Technology Corp. v Uniroyal, Inc., 129 FRD 621, 625, 628, 629 [SD NY]; 1 Hazard & Hodes, op. cit, at 436-437).
In practical application, the test we adopt thus would prohibit direct communication by adversary counsel "with those officials, but only those, who have the legal power to bind the corporation in the matter or who are responsible for implementing the advice of the corporation’s lawyer, or any member of the organization whose own interests are directly at stake in a representation.” (Wolfram, op. cit, § 11.6, at 613.) *375 This test would permit direct access to all other employees, and specifically — as in the present case — it would clearly permit direct access to employees who were merely witnesses to an event for which the corporate employer is sued.
Apart from striking the correct balance, this test should also become relatively clear in application. It is rooted in developed concepts of the law of evidence and the law of agency, thereby minimizing the uncertainty facing lawyers about to embark on employee interviews. A similar test, moreover, is the one overwhelmingly adopted by courts and bar associations[5] throughout the country, whose long practical experience persuades us that — in day-to-day operation — it is workable.[6]
Finally, we note the particular contribution made by the various amici curiae in this case; by highlighting the diverse contexts in which the question may arise, their submissions *376 have enlarged our comprehension of the broad potential impact of the issue presented. In so doing, however, they have also alerted us to the wisdom of flagging what is in any event implicit in our decisions — that they are limited by the facts before us and the questions put to us. Today’s decision resolves the present controversy by allowing ex parte interviews with nonmanagerial witnesses employed by a corporate defendant; even in that limited context, we recognize that there are undoubtedly questions not raised by the parties that will yet have to be answered. Defendants’ assertions that ex parte interviews should not be permitted because of the dangers of overreaching, moreover, impel us to add the cautionary note that, while we have not been called upon to consider questions relating to the actual conduct of such interviews, it is of course assumed that attorneys would make their identity and interest known to interviewees and comport themselves ethically.
Accordingly, the order of the Appellate Division should be modified, without costs, by reversing so much of the Appellate Division order as denied plaintiff’s motion to permit ex parte interviews of current DeTrae employees and, as so modified, the Appellate Division order should be affirmed and the certified question answered in the negative.

. DR 7-104 (A) (1) reads: "During the course of [the] representation of a client a lawyer shall not * * * [c]ommunicate or cause another to communicate with a party [the lawyer] knows to be represented by a lawyer in that matter unless [the lawyer] has the prior consent of the lawyer representing such other party or is authorized by law to do so.”
Employees individually named as parties in the litigation, and employees individually represented by counsel, are not within the ambit of the question presented by this appeal. Nor, obviously, are direct interviews on consent of counsel, or those authorized by law, or communications by the client himself (unless instigated by counsel).

. Two subsidiary matters deserve mention. First, we reject DeTrae’s claim that this appeal must be dismissed for mootness by reason of the fact that all potential witnesses are now former employees available for interview. In that plaintiff disputes this assertion, and represents that he seeks an ex parte interview with a current DeTrae employee and possibly employees of the other entities, the appeal is not moot and we need not consider whether the appeal would otherwise fall within an exception to the mootness doctrine (see, Matter of Sharon B., 72 NY2d 394, 397). Second, in the trial court and the Appellate Division the parties litigated the right to pursue both oral and written discovery of the same entity. In the Appellate Division plaintiff prevailed on his claim that he was entitled to both depositions and written interrogatories of defendants, and no appeal is taken from that determination.

. This rule was adopted only in one formerly reported decision and three bar association ethics committee opinions (see, Committee on Professional Ethics, Bar Assn of Nassau County Opn No. 2-89 [1989]; Los Angeles County Formal Ethics Opn No. 410 [1983]; New York County Lawyers’ Assn, Opn No. 528 [1964]). The formerly reported decision, Hewlett-Packard Co. v Superior Ct. (Jensen) (205 Cal App 3d 43, 252 Cal Rptr 14), was "depublished” by the California Supreme Court and thus is without precedential significance. Moreover, on November 28,1989, the California Supreme Court approved a new disciplinary rule which permits attorneys to initiate ex parte interviews with certain employees of a corporation (see, Cal Rules Prof Conduct, rule 2-100; Triple A Mach. Shop v State of California, 213 Cal App 3d 131, 261 Cal Rptr 493).

. A "control group” test was adopted in Fair Automotive Repair v Car-X Serv. Sys. (128 Ill App 3d 763, 471 NE2d 554), Maxwell v Southwestern Bell Tel. Co. (No. 80-4239 [D Kan, Oct. 28, 1980]), and three bar association opinions (Los Angeles County Bar Assn Opn No. 369 [1977]; Arizona State Bar Assn Opn No. 203 [1966]; Idaho State Bar Assn Opn No. 21 [I960]).

. See, e.g., Wright v Group Health Hosp., 103 Wash 2d 192, 691 P2d 564; Bey v Village of Arlington Hgts., 50 Fair Empl Prac Cas (BNA) 1375 (ND Ill); Chancellor v Boeing Co., 678 F Supp 250 [D Kan]; Porter v Arco Metals Co., 642 F Supp 1116 (D Mont); Frey v Department of Health & Human Servs., 106 FRD 32 (ED NY); Shealy v Laidlaw Bros., 34 Fair Empl Prac Cas (BNA) 1223 (D SC); Sobel v Yeshiva Univ., 28 Empl Prac Dec (CCH) Ü 32,479 (SD NY); see also, ABA/BNA Lawyers’ Manual on Professional Conduct, at 71:303-71:304 (1984). Among bar associations the test has, for example, been adopted in ABA Committee on Ethics and Professional Responsibility, Informal Opn No. 1410 (1978); Alabama State Bar Assn, Ethics Opn No. RO-83-81 (1983); Alaska Bar Assn, Ethics Opn No. 71-1 (1971); Committee on Ethics, Colorado Bar Assn, Opn No. 69 (1985); District of Columbia Bar Assn, rule 4.2 (Mar. 1, 1990); Bar of Georgia, Formal Advisory Opn No. 87-6 (87-R2), issued by the Supreme Court July 12, 1989; Idaho State Bar Assn, Formal Opn No. 22 (1960); Professional Ethics Committee, Board of Overseers, Bar of State of Maine, Opn No. 94 (1989); Committee on Professional and Judicial Ethics, State Bar of Michigan, Opn No. CI-526 (1980); Committee on Legal Ethics and Professional Conduct, Ohio State Bar Assn, Opn No. 81-5 (1981); Professional Guidance Committee, Philadelphia Bar Assn, Guidance Inquiry No. 88-30 (1988); State Bar of Texas, Opn No. 342, 23 Baylor L Rev 877 (1968); Standing Committee on Legal Ethics, Virginia State Bar, Legal Ethics Opn No. 905 (1987).

. Given the nationwide experience with the test we now adopt, we find no basis for the assertion made in . the concurrence that the test will unnecessarily curtail informal factgathering or itself generate litigation. Above all, our test is decidedly different from the Appellate Division’s blanket ban (concurring opn, at 376); in this very case, for example, we are reversing the Appellate Division’s prohibition and permitting interviews of employee-witnesses to an accident, which would not be allowed under a blanket ban. In order to put to rest any possible confusion, we make clear that the definition of "party” we adopt for the purposes of DR 7-104 (A) (1) is not derived from the Official Comment to ABA Model rule 4.2 (concurring opn, at 377).