**CIRCUIT COURT OF THE CITY OF ROANOKE**

Terry L. Schmidt

v.

Norfolk & Western Ry. Co.

January 10, 1994

Case No. CL92000711

BY JUDGE CLIFFORD R. WECKSTEIN

This is an action brought in state court under the Federal Employers' Liability Act (FELA). The defendant, the Norfolk & Western Railway Company, has admitted in its pleadings that, at all material times, it operated a railway in interstate commerce and employed the plaintiff as a "utility mechanic." The plaintiff asserts that he is entitled to damages from the railway company for injuries sustained in a job-related incident that occurred on or about January 31, 1991.

According to motions and memoranda filed by counsel and according to the representations of counsel in oral arguments, one or more of the plaintiff's attorneys have interviewed co-workers of the plaintiff, laborers employed at Norfolk & Western's material yard in Roanoke, Virginia. Counsel for the defendant asserts that when the defendant's claim agent attempted to investigate the accident after plaintiff filed suit, "the only eyewitness to the accident told her that he and several other employees already had met with plaintiff's attorney. When the claim agent asked this witness if he could sign a written statement concerning the circumstances of the accident, he said he would have to clear any statement with plaintiff's attorney before he could sign it."

The defendant propounded interrogatories, seeking identification by the plaintiff of all employees of the defendant "you, your attorney, or any employee, representative or agent of your attorney, has questioned, interviewed, or met with to discuss any issues, facts or evidence relevant to this law suit." Similarly, the defendant sought identification of any railway employee from whom the plaintiff had obtained a state-

ment and sought information about a time and place of statements and persons present when discussions took place. By requests for production of documents, the defendant sought statements obtained by the plaintiff, his attorney or any representative of his attorney (other than through formal discovery), the date it was obtained, and the individual from whom it was received. Counsel for the plaintiff objected to these interrogatories and requests for production on the basis that the defendant sought information "protected by the doctrines of attorney work product and/or attorney client privilege." The defendant seeks to compel answers to those interrogatories and requests for production.

The defendant railway company further asks the court to order plaintiff's counsel, or any agent on his behalf, to refrain from further "*ex parte* contact" with any employee of the defendant in regard to this litigation, without the consent or knowledge of defendant's counsel, or through formal discovery methods, arguing that such contact violates D.R. 7–103(A)(1) of the Virginia Code of Professional Responsibility.

For these reasons, and based upon the authorities cited by counsel for the plaintiff in a memorandum received and filed on December 9, 1993, I deny the Railway Company's request to forbid plaintiff's counsel from interviewing its low-level non-managerial employees about an alleged on-the-job injury sustained by one of their co-workers, the circumstances of the incident, and the work conditions surrounding the plaintiff's claim for recovery and damages.

Though there is no Virginia appellate decision on point, the standing committee on Legal Ethics of the Virginia State Bar "has consistently opined that it is not impermissible for an attorney to directly contact and communicate with employees of an adverse party provided that the employees are not members of the corporation's 'control group' and are not able to commit the organization or corporation to specific courses of action that would lead one to believe the employee is the corporation's alter ego. See, e.g., Legal Ethics Opinion Nos. 347, 530, 795; *Upjohn Co. v. U.S.*, 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)." Legal Ethics Opinion No. 1504, December 14, 1992.

While the Virginia State Bar's "control group" test may not be the one followed in the majority of jurisdictions, the overwhelming weight of authority rejects the Railway Company's argument that the Disciplinary Rules prohibit contact with *any* employee of the corporate defendant. *See, e.g., Niesig v. Team I, et al.*, 76 N.Y.2d 363, 558

N.E.2d 1030 (1990), a persuasive opinion by the current chief judge of New York's highest court.

The railway company relies for support of its interpretation of D.R. 7–103(A)(1) on a memorandum opinion of another trial judge. *Queensberry v. Norfolk and Western Railway Company* (C/A 3:93CV163, E.D. Va. August 2, 1993). The plaintiff argues, and I agree, that in deciding that case, the federal district judge was justifiably concerned with the effect, under the Federal Rules of Evidence, of any admission that even the lowest-level employee might make. As the plaintiff notes, such a concern does not exist in Virginia's state courts, where the Federal Rules do not apply. Thus, the plaintiff suggests, *Queensberry* should be distinguished from the case at bar.

The defendant, on the other hand, citing my words in another FELA case, suggests that state court judges owe great deference to federal decisions in cases arising under an Act of Congress, and thus that *Queensberry* should be determinative.

What is at issue here, however, is not the federal statute, but the state's Disciplinary Rule, promulgated and enforced by the state's judicial branch. *Cf., Niesig v. Team I, supra*, 558 N.E.2d at 1032. While I have the greatest respect for the district judge who decided *Queensberry*, I conclude that he was incorrect in his interpretation of the application of Virginia's Disciplinary Rules in this situation and therefore do not follow his guidance on the point.

Unlike counsel for the railroad, I am unsurprised by the fact that the plaintiff's co-workers might identify more closely with him and his cause than with the Company's claim agents. I therefore decline to draw from the eyewitness' comments any sinister inferences.

Having rules in the plaintiff's favor on this point, it of course follows logically that I sustain the plaintiff's objections to the interrogatories and requests for production of documents in question and accordingly deny the defendant's motion to compel.

As the Virginia Supreme Court said in *Commonwealth v. Edwards*, 235 Va. 499, 510, 370 S.E.2d 296 (1988), "[t]he work product doctrine is closely related to the attorney-client privilege. Generally, material such as 'interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs,' which are 'prepared by an adversary's counsel with an eye toward litigation' may be free from discovery. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). See *Rakes v. Fulcher*, 210 Va. 542, 546, 172 S.E.2d 751, 755–56 (1970)." In the

case at bar, it cannot seriously be contended that the material sought by the railway company is not protected by the work product doctrine. The railway company does not argue any of the accepted exceptions to this doctrine but contends that it is entitled to the requested information because, it asserts, the plaintiff's attorney has engaged in improper conduct. I have found that there was no impropriety in the conduct. Therefore, the railroad will not be given access to the plaintiff's attorney work product.