OPINION OF THE COURT
John P. Lane, J.
Defendant’s motion seeks preclusion of the sworn statement taken from one of defendant’s employees without notice to defense counsel and claimants’ cross motion seeks to compel defendant to produce the witness, William Loeschke, for deposition and to allow other witnesses to be questioned regarding his testimony.
These claims arise from a motor vehicle accident that occurred at 7:28 a.m. January 13, 1993 on Route 93, commonly known as the Lockport Bypass, in the Town of Lockport, Niagara County. Fifteen-year-old Wesley J. Gilbert, a passenger in the vehicle driven by his 18-year-old sister Nichelle, was killed in the collision and Nichelle L. Gilbert was very seriously injured. The bill of particulars in claim No. 89001 indicates that the Gilbert vehicle slid into oncoming traffic when it encountered a section of highway "thickly covered with a great deal of ice for at least several hundred feet prior to the point of collision.” (Bill of particulars If 7.)
On February 25, 1997, in their offices, claimants’ counsel took a statement before a court stenographer from William Loeschke, a Highway Maintenance Supervisor I (HMS I) employed by the New York State Department of Transportation (DOT). The statement was taken without notice to defendant or its counsel and occurred subsequent to the depositions of at least two other DOT employees. Defendant now seeks to preclude use of the statement, as well as to prohibit any deposition of Mr. Loeschke and any further questioning of DOT witnesses regarding Mr. Loeschke’s statement. The statement in issue concerns the activities of the DOT plow operator assigned to the Lockport Bypass at the time of the accident as well as the condition of the bypass and could be very damaging to defendant’s case. Defense counsel relies upon Code of Professional Responsibility DR 7-104 (A) (1) (22 NYCRR 1200.35 [a] [1]) for his argument that claimants’ counsel’s actions constituted an ethical violation; and seeks to distinguish this case on its facts from the situation addressed by the Court of Appeals in Niesig v Team I (76 NY2d 363).
*144 In response, claimants’ counsel filed a notice of cross motion to compel defendant to produce Mr. Loeschke for deposition and to compel further questioning of other DOT employees following the Loeschke deposition. Counsel for claimants maintain that they studied the Niesig decision (supra) and determined Mr. Loeschke was not a "party” to the litigation as that term has been construed in Niesig in relation to the application of DR 7-104 (A) (1) (22 NYCRR 1200.35 [a] [1]). It is their position that Loeschke was merely a witness to certain events and shared no responsibility for the maintenance of the bypass the morning of the accident. With respect to Loeschke’s position in the hierarchy at DOT, they concede, at most, that he was a working foreman, and not in a position to bind defendant with admissions. Counsel indicated to the court that they became aware of Loeschke after they were contacted by a former DOT employee who had encountered Loeschke socially and heard his version of events. Given the information supplied by the former employee and accounts of emergency personnel and other disinterested witnesses to the accident, counsel were dissatisfied with and suspicious of the answers they obtained from some of the DOT employees deposed. It was at that point, they maintain, that they decided to try to obtain a statement from Mr. Loeschke.
The affidavit of Lawrence Kieffer, resident engineer for DOT’s Niagara County Highway Maintenance Residency, indicates that the chain of command included himself, two assistant resident engineers, and, for the morning shift, an HMS II supervisor, and three HMS I employees, whom the court will refer to as foremen. (Claimants’ counsel indicated at oral argument that there were a total of five HMS II’s and 10 HMS I’s in the residency.)
At the time of the Gilbert accident, HMS I Charles Butera was serving as acting supervisor for the HMS II, who was in training. The morning shift assistant resident engineer and the resident engineer were expected to arrive a bit later. As supervisor, Mr. Butera made up the crews, assigned the equipment and assigned the remaining HMS I’s to patrolling duties. The bypass fell within the patrol area of HMS I Greg Papai. Although HMS I Loeschke’s patrol assignment did not include the bypass, he traveled the bypass to return to the shop after performing his patrol duties.
Given that Mr. Loeschke was not assigned to a plow, was not assigned to patrol the bypass, and was not the supervisor of either the plow crew or the patrol foreman, one can understand *145 why neither the Niagara County Residency nor the Assistant Attorney-General interviewed him regarding his knowledge of the accident or made his name available to claimants’ counsel as a knowledgeable witness for deposition. In response to claimants’ discovery demands, defendant made available assistant resident engineer Maynard L. Hagen, who responded to the accident scene about 8:00 a.m., assisted the police and later took statements from the plow driver and wingman. Defendant also produced the plow driver, the wingman, HMS II Stadler and other employees, but not Loeschke. In addition, defendant made available a statement from HMS I Papai containing his recollections of the shift and road conditions the morning of the accident.
Pursuant to Code of Professional Responsibility DR 7-104 (A) (1) (22 NYCRR 1200.35 [a] [1]) of, a lawyer is prohibited from communicating directly with a "party” known to have counsel in the matter.
"During the course of the representation of a client a lawyer shall not: * * *
"[c]ommunicate or cause another to communicate * * * with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so.”
In Niesig v Team I (76 NY2d 363, supra), the Court of Appeals, for reasons of policy, specifically rejected the contention that an employee of a counseled corporate party in litigation is by definition also a "party” within the meaning of the disciplinary rule. The Court began its analysis by noting that the Code of Professional Responsibility, approved by the New York State Bar Association and then enacted by the Appellate Divisions, is essentially the legal profession’s document of self-governance, embodying principles of ethical conduct for attorneys as well as rules for professional discipline. The Court noted, however, that although unquestionably important and respected by the courts, "the code does not have the force of law”. (76 NY2d, at 369.) Because a corporation or government entity that is a party to litigation can act only through natural persons, and because the disciplinary rule does not define the term "party”, the issue "distills to which corporate employees should be deemed parties for purposes of DR 7-104 (A) (1), and that choice is one of policy. The broader the definition of 'party’ in the interests of fairness to the corporation, the greater the cost in terms of foreclosing vital informal access to facts.” (76 NY2d, at 371.) The Court rejected both a blanket ban on communica *146 tions with any employee of a party, at one end of the spectrum; and the "control group” test defining "party” to include only the most senior management exercising substantial control over the corporation, at the other. It described the test to be applied in this State as follows: "The test that best balances the competing interests, and incorporates the most desirable elements of the other approaches, is one that defines 'party’ to include corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation’s 'alter egos’) or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel. All other employees may be interviewed informally.” (76 NY2d, at 374.) Practical application of this test, the Court said, "would prohibit direct communication by adversary counsel 'with those officials, but only those, who have the legal power to bind the corporation in the matter or who are responsible for implementing the advice of the corporation’s lawyer, or any member of the organization whose own interests are directly at stake in a representation’ * * * This test would permit direct access to all other employees, and specifically * * * it would clearly permit direct access to employees who were merely witnesses to an event for which the corporate employer is sued.” (76 NY2d, at 374-375. [citations omitted].)
The affidavit of Lawrence Kieffer describes Mr. Loeschke as being in charge of all men in the field in his particular section, as having authority to direct personnel and equipment to any particular road or condition needing attention, and as being in charge of making all decisions in the field such as directing personnel, closing roads, ordering parts, notifying police, and calling for backup assistance. In addition, the Kieffer affidavit states that Loeschke could file complaints regarding disciplinary actions against employees, report misconduct, and request appropriate procedures relative to errant employees. Mr. Kieffer’s affidavit further states that Loeschke had the responsibility and duty to report and seek appropriate action regarding the conditions or events he claimed to have observed. The Kieffer affidavit also points out that Loeschke’s statement differs significantly from those of the other DOT employees interviewed, and suggests that Loeschke might be motivated to harm the residency in retaliation for a notice of discipline issued against him on January 29, 1997.
The responding affidavit of attorney Jon Louis Wilson notes that the Loeschke allegations were brought to counsel’s attention shortly after the accident and therefore could not have *147 been motivated by disciplinary problems occurring four years later. The affidavit also notes that Loeschke’s statement indicates he advised Papai and his supervisor Butera of the condition of the bypass as soon as he returned to the shop; and that he thereafter observed Papai deal with the plow driver assigned to the route. Under the circumstances, Mr. Kieffer’s implication that Loeschke failed to act as he should have given his knowledge of certain conditions is unwarranted.
It is clear that Mr. Loeschke was not implementing the advice of counsel, and had never spoken about this case to defendant’s counsel before his statement was given to claimants’ counsel. It is equally clear that his own personal interests were not directly at stake because he had not been responsible for plowing, salting, or patrolling the bypass or for supervising those who were.
The question becomes whether Mr. Loeschke, under the circumstances presented here, can be considered an employee whose acts or omissions can bind the defendant or who has legal authority to bind the defendant. The court concludes that he cannot. The authority inherent in Mr. Loeschke’s position is described broadly in Mr. Kieffer’s affidavit. It includes ordering parts, closing roads and notifying police. These activities all call for contact with third parties relative to road conditions and equipment maintenance or repairs on behalf of the State of New York. Clearly, a person in Mr. Loeschke’s HMS I classification could be charged with all maintenance supervision for the residency where circumstances warranted. Mr. Butera, who was in charge the morning of the accident, was such an HMS I. The fact remains, however, that Mr. Loeschke’s responsibilities the morning of this tragic accident did not include the Lockport Bypass. Mr. Papai and Mr. Butera were in charge and other employees were assigned to plow and apply abrasives to that route. Under exigent circumstances, any employee, and particularly a first-line supervisor, might be called upon to exercise broad authority. Because such an employee might exercise that authority under compelling conditions, however, does not mean that he or she is authorized or expected to take such actions on a regular basis when higher-ranked employees are available to shoulder the responsibility.
By way of analogy, the court similarly concludes that any statements made by Mr. Loeschke concerning the matter would not be admissible under the hearsay rule as admissions against his employer’s interests. It is clear that under current New York law, the "speaking agent” exception to the hearsay rule *148 governs admissions by agents and employees. Under that exception, "the hearsay statement of an agent is admissible against his employer under the admissions exception to the hearsay rule only if the making of the statement is an activity within the scope of his authority”. (Loschiavo v Port Auth. of N. Y. & N. J., 58 NY2d 1040, 1041; see, Kelly v Diesel Constr. Div. of Carl A. Morse. Inc., 35 NY2d 1, 8; Spett v President Monroe Bldg. & Mfg. Corp., 19 NY2d 203; Brkani v City of New York, 211 AD2d 740; Johnson v Hallam Enters., 208 AD2d 1110; Nordhauser v New York City Health & Hosps. Corp., 176 AD2d 787; Falcone v EDO Corp., 141 AD2d 498; Brusca v El Al Israel Airlines, 75 AD2d 798.)
The court is aware of the significance of this ruling to the Attorney-General’s office and has carefully considered the cases, primarily Federal, relied upon by defense counsel. In light of the decision in Niesig v Team I (supra) and the factual circumstances presented here, however, the court is unable to adopt the position advocated by defendant.
Finally, even if we were to have concluded that the statement was obtained from Mr. Loeschke in violation of DR 7-104 (A) (1) (22 NYCRR 1200.35 [a] [1]), admissibility of a statement is not affected by the means through which it is obtained. "[A]bsent some constitutional, statutory, or decisional authority mandating the suppression of otherwise valid evidence (see, e.g., CPLR 4506), such evidence will be admissible even if procured by unethical or unlawful means (see, Sackler v Sackler, 15 NY2d 40; see also, Richardson, Evidence § 558 [Prince 10th ed]).” (Stagg v New York City Health & Hosps. Corp., 162 AD2d 595, 596; see, Nordhauser v New York City Health & Hosps. Corp., 176 AD2d 787, 791, supra.)
Accordingly, having concluded that Mr. Loeschke’s role in the tragic events of January 13, 1993 was essentially that of a witness, and that he therefore is not a party to this litigation as the term has been construed in Niesig v Team I (76 NY2d 363, supra), it is hereby ordered that defendant’s motion No. M-55550 is denied and claimants’ cross motion No. CM-55717 is granted.