BRISCOE, Circuit Judge,
concurring:
I concur in the result, but write separately to briefly express my views regarding the interpretation of Oklahoma Rule of Professional Conduct 4.2. At the time of Barringer’s ex parte contacts with Hix and Midgett, Rule 4.2 provided:
In representing a client, a lawyer shall not communicate, or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.
Okla. Stat. tit. 5, Ch. 1, App. 3-A, Rule 4.2 (1996). The critical question we are asked to decide is whether Hix and/or Midgett can be considered “parties” for purposes of Rule 4.2. More specifically, because Hix and Midgett are not named parties to the action, the question is whether they can be considered synonymous with the District for purposes of this litigation. See Niesig v. Team I, 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030, 1033 (1990) (“In litigation only the entity, not its employee, is the actual named party; on the other hand, corporations act solely through natural persons, and unless some employees are also considered parties, corporations are effectively read out of the rule.”).
To determine the meaning of the word “party,” the best starting point is the Comment to Rule 4.2, which (as of 1996) provided, in pertinent part:
*1214 In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.
Okla. Stat. tit. 5, Ch. 1, App. 8-A, Rule 4.2, Comment '(1996). Although the Comment provides some assistance, it is ambiguous in several important respects[1], and has thus been interpreted in widely divergent ways by federal arid state courts. See, e,g., Jeffrey D. Wohl, Ethical Obligations of Employment Lawyers, 615 PLI/Lit 1033, 1060-64 (1999) (discussing various interpretations of Rule 4.2 adopted by the ■courts); Stephen M. Sinaiko, Ex Parte Communication and the Corporate Adversary: A New Approach, 66 N.Y.U.L.Rev. 1456 (Nov.1991) (same).
The Oklahoma Supreme Court has previously wrestled with the ambiguities of Rule 4.2 and has held that “[i]n litigation involving corporations, Rule 4.2 applies to only those employees who have the legal authoi’ity to bind a corporation in a legal evidentiary sense, i.e., those employees who have ‘speaking authority’ for the corporation.” Fulton v. Lane, 1992 OK 25, 829 P.2d 959, 960 (1992). Although we are not bound by Fulton, see Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1383 (10th Cir. 1994) (indicating that ethical rules in federal proceedings are subject to a national standard), it would arguably create difficulties for practitioners in Oklahoma were we to adopt an interpretation of Rule 4.2 different from that adopted by the Oklahoma Supreme Court. See Weider Sports Equip. Co. v. Fitness First, Inc., 912 F.Supp. 502, 510 (D.Utah 1996) (noting that if a federal court interprets Rule 4.2 in a manner different from the highest state court of the state in which the federal court sits, it “could create problems for counsel by not knowing where the case was going to be litigated and which standard applied”); see generally Hill v. St. Louis Univ., 123 F.3d 1114, 1121 (8th Cir.1997) (interpreting Rule 4.2 of the Missouri Supreme Court Rules of Professional Conduct in a manner identical to the interpretation adopted by the Missouri Supreme Court).
The problem, however, is that Fulton’s interpretation of Rule 4.2 is itself ambiguous. In holding that the rule “applies to only those employees who have the legal authority to bind a corporation in a legal evidentiary sense,” 829 P.2d at 960, the opinion cites two cases with contrasting interpretations of Rule 4.2. The first case, Chancellor v. Boeing Co., 678 F.Supp. 250, 252-53 (D.Kan.1988), broadly construes Rule 4.2 in a manner consistent with Fed. R.Evid. 801(d)(2)(D), and prohibits ex parte contact whenever the proposed interview would concern matters within the scope of the employee’s employment. The second case, Wright by Wright v. Group Health Hosp., 103 Wash.2d 192, 691 P.2d 564, 569 (1984), construes Rule 4.2 in a more narrow fashion, holding that it precludes ex parte contact only with those employees who “have managing authority sufficient to give them the right to speak for, and bind, the [employer] corporation.” In other words, “[b]ecause the Wright managing-speaking agent test examines the authority of individuals to speak for the corporation, it points to the group of employees who, because they are ‘authorized by the party to make a statement,’ can make statements constituting eviden-tiary admissions under Rule 801(d)(2)(C) of the Federal Rules of Evidence.” Sinai-ko, supra at 1485 (internal footnotes omitted).
Given the ambiguities of Fulton, we are thus left to interpret Rule 4.2 on our own. *1215 Weighing the strengths and weaknesses of the available interpretations, I agree with the majority that we should adopt an interpretation consistent with Fed.R.Evid. 801(d)(2)(D)’s “scope-of-employment” test. Although I am admittedly concerned about the effect this interpretation will have on a party’s ability to obtain information from an opposing corporate party, I am persuaded that it is the only interpretation that adequately protects a corporate party against the prejudice of ex parte communications with its employees. See, e.g., Association of the Bar of the City of New York Comm, on Professional Ethics, Op. No. 80-46 (undated) (“We believe that the corporation’s right to effective representation can be guarded adequately only by viewing all present employees of a corporation as ‘parties’ ... where the proposed interview concerns matters within the scope of the employee’s employment.”); see generally Michael H. Graham, Federal Practice and Procedure § 6723 at 184-88 (“all that is required [for a statement to be admissible] is that [it] concern a matter within the scope of the agency or employment, and that the agent or servant still be employed at the time of making the statement”).
In light of this interpretation, I further agree with the majority that Barringer was prohibited from engaging in ex parte communications with Hix and Midgett, because both were deposed concerning matters within the scope of their employment. In particular, Hix, as Weeks’ immediate supervisor, was questioned about the details of Weeks’ termination. Midgett, as operations supervisor for the transportation department, was questioned about how requests for overtime compensation were processed, and how overtime and payroll records were maintained. Finally, both Hix and Midgett were questioned about whether a racially hostile working environment existed within the transportation department.

. For example, it is unclear precisely what was intended by the Comment's use of the phrase "persons having a managerial responsibility on behalf of the organization.” Likewise, the phrase persons "whose statements may constitute an admission on the part of the organization” can be interpreted in a number of different ways.