[868 NE2d 208, 836 NYS2d 527]

Muriel Siebert & Co., Inc., Appellant, v Intuit Inc., Respondent.

Argued March 28, 2007; decided May 8, 2007

### POINTS OF COUNSEL

*Ingram Yuzek Gainen Carroll & Bertolotti, LLP,* New York City (*Dean G. Yuzek, Susan B. Ratner* and *Jennifer B. Schain* of counsel), for appellant. The Appellate Division's holding that Muriel Siebert & Co., Inc. was required to identify precisely what privileged information Nicholas Dermigny imparted to Quinn Emanuel Urquhart Oliver & Hedges, LLP applied an erroneous standard that weakens the attorney-client privilege and deprives the trial court of its discretion to ensure the integrity of the proceedings over which it presides. (*Niesig v Team I,* 76 NY2d 363; *Erie County Water Auth. v Western N.Y. Water Co.,* 304 NY 342; *Jamaica Pub. Serv. Co. v AIU Ins. Co.,* 92 NY2d 631; *Hull v Celanese Corp.,* 513 F2d 568; *Matter of Holtzman,* 78 NY2d 184; *Matter of Red Hook/Gowanus Chamber of Commerce v New York City Bd. of Stds. & Appeals,* 5 NY3d 452; *Renault, Inc. v Auto Imports,* 19 AD2d 814; *Tekni-Plex, Inc. v Meyner & Landis,* 89 NY2d 123; *Collier v RAM Partners, Inc.,* 159 F Supp 2d 889.)

*Quinn Emanuel Urquhart Oliver & Hedges, LLP,* New York City (*Kathleen M. Sullivan, Claude M. Stern, Marc L. Greenwald* and *Jonathan B. Oblak* of counsel), for respondent. I. An interview of an opposing party's former employee that neither seeks nor elicits privileged information is permissible under existing disciplinary rules and settled precedent. (*Niesig v Team I,* 76 NY2d 363; *Aiken v Business & Indus. Health Group, Inc.,* 885 F Supp 1474; *McGrane v Reader's Digest Assn., Inc.,* 822 F Supp 1044; *Upjohn Co. v United States,* 449 US 383; *International Bus. Machs. Corp. v Edelstein,* 526 F2d 37; *Jamaica Pub. Serv. Co. v AIU Ins. Co.,* 92 NY2d 631; *MMR/Wallace Power & Indus., Inc. v Thames Assoc.,* 764 F Supp 712; *Matter of Weinberg,* 129 AD2d 126; *Hull v Celanese Corp.,* 513 F2d 568; *Solow v Grace & Co.,* 83 NY2d 303.) II. Muriel Siebert & Co., Inc.'s proposed change in the law to permit disqualification of counsel based on a mere "appearance of impropriety" or "risk" of disclosure is unworkably vague and subjective and would unduly deter attorneys from conducting ex parte employee interviews. (*Develop Don't Destroy Brooklyn v Empire State Dev. Corp.,* 31 AD3d 144; *Matter of Stephanie X.,* 6 AD3d 778; *Bennett Silvershein Assoc. v Furman,* 776 F Supp 800; *Niesig v*

*Team I,* 76 NY2d 363; *John Blair Communications v Reliance Capital Group,* 182 AD2d 578; *Baliva v State Farm Mut. Auto. Ins. Co.,* 275 AD2d 1030; *O'Donnell, Fox & Gartner v R-2000 Corp.,* 198 AD2d 154; *United States v Beiersdorf-Jobst, Inc.,* 980 F Supp 257; *Solow v Grace & Co.,* 83 NY2d 303; *Tekni-Plex, Inc. v Meyner & Landis,* 89 NY2d 123.) III. In the event that this Court should adopt a new rule of disqualification, any such rule should apply only prospectively. (*O'Donnell, Fox & Gartner v R-2000 Corp.,* 198 AD2d 154; *Matter of Abrams [John Anonymous],* 62 NY2d 183; *People v Arroyave,* 49 NY2d 264; *Texas Catastrophe Prop. Ins. Assn. v Morales,* 975 F2d 1178.)

*Pollack, Pollack, Isaac & De Cicco,* New York City (*Brian J. Isaac* of counsel), for New York State Trial Lawyers Association, amicus curiae. Disqualification is precluded on this record under *Niesig v Team I* (76 NY2d 363 [1990]). (*Matter of Stephanie X.,* 6 AD3d 778; *Grievance Comm. for S. Dist. of N.Y. v Simels,* 48 F3d 640; *International Bus. Machs. Corp. v Edelstein,* 526 F2d 37.)

*Pillsbury Winthrop Shaw Pittman LLP,* New York City (*David G. Keyko* of counsel), for the Association of the Bar of the City of New York, amicus curiae. I. Limiting the no-contact rule in New York to present employees appropriately balances the need to protect the integrity of the attorney-client relationship from adversarial interference with the need to preserve informal discovery procedures. (*Niesig v Team I,* 76 NY2d 363.) II. *Niesig v Team I* (76 NY2d 363 [1990]) properly balances protecting the attorney-client privilege and preserving access to vital information by permitting a lawyer to interview certain employees of adversary corporations and former employees. III. This Court's holding in *Niesig v Team I* (76 NY2d 363 [1990]) should not be modified because other provisions of the Code of Professional Responsibility protect against the invasion of the attorney-client privilege in interviews with former employees. IV. The lower court's use of an "appearance of impropriety" standard undercuts recent New York case law and runs counter to the emerging national trend of eliminating the "appearance of impropriety" standard from professional responsibility codes. (*Matter of Stephanie X.,* 6 AD3d 778; *People v Herr,* 86 NY2d 638; *International Elecs. Corp. v Flanzer,* 527 F2d 1288; *Bennett Silvershein Assoc. v Furman,* 776 F Supp 800; *Delta Fin. Corp. v Morrison,* 13 Misc 3d 1229[A], 2006 NY Slip Op 52059[U]; *Saftler v Government Empls. Ins. Co.,* 95 AD2d 54; *Bank of Tokyo Trust Co. v Urban Food Malls,* 229 AD2d 14; *Spectrum Sys. Intl. Corp. v Chemical Bank,* 78 NY2d 371.)

*Bernstein Litowitz Berger & Grossman LLP,* New York City (*Darnley D. Stewart* of counsel), for National Employment Lawyers Association/New York, amicus curiae. I. The Appellate Division correctly overruled the IAS court's disqualification of defendant's counsel for interviewing a former employee of its adversary. (*Niesig v Team I,* 76 NY2d 363; *Smith v Kalamazoo Ophthalmology,* 322 F Supp 2d 883; *Cerqueira v Clivilles,* 213 AD2d 202.) II. Reversal of the Appellate Division's ruling will adversely impact litigants with limited resources. (*Postal Service Bd. of Governors v Aikens,* 460 US 711; *Niesig v Team I,* 76 NY2d 363; *Mena v Key Food Stores Coop.,* 195 Misc 2d 402; *Smith v Rafalin,* 6 Misc 3d 1041[A], 2005 NY Slip Op 50385[U]; *Nimkoff v Nimkoff,* 18 AD3d 344.)

### OPINION OF THE COURT

PIGOTT, J.

Plaintiff Muriel Siebert & Co., Inc., a discount brokerage firm, entered into a "strategic alliance" agreement with defendant Intuit Inc., a manufacturer of financial software, to jointly create and operate an Internet brokerage service. Although the parties were initially successful in that endeavor, their relationship became strained when Siebert asserted that Intuit had failed to promote the Internet brokerage service to its customers. In September 2003, Siebert commenced an action against Intuit for, among other things, breach of contract and breach of fiduciary duty in failing to promote Siebert's business interests.

Nicholas Dermigny, Executive Vice President and Chief Operating Officer for Siebert, was both an important participant in the events at issue in the Intuit lawsuit and a member of Siebert's "litigation team" after the lawsuit began. He participated in the negotiations of the Siebert-Intuit agreement and discussions with Intuit relating to its implementation. He also assisted in drafting the complaint and responses to interrogatories, was privy to discussions concerning Siebert's litigation strategy, and engaged in privileged and confidential communications with Siebert's counsel. In May 2005, Dermigny took a leave of absence to negotiate the terms of his impending separation and eventual termination from Siebert. Counsel for Siebert sought to continue representation of Dermigny at his scheduled deposition, but Dermigny refused. Siebert's counsel informed an attorney for Intuit that Siebert could not produce Dermigny for the deposition because it no longer had control over him. Therefore, Intuit subpoenaed Dermigny for a deposition rescheduled for September 26, 2005.

Dermigny was terminated by Siebert on September 6, 2005. Upon learning of Dermigny's termination, Intuit's attorneys contacted him without Siebert's knowledge and arranged for an interview. Before commencing the interview, Intuit's attorneys advised Dermigny that he should not disclose any privileged or confidential information, including any conversations with Siebert's counsel, or offer any information concerning Siebert's legal strategy. Dermigny was further cautioned that if, during the interview, he was asked a question that could potentially lead to the disclosure of such information, he should so advise Intuit's attorneys and decline to answer the question. Intuit's attorneys then questioned Dermigny about the underlying facts of the case, but did not elicit any privileged information nor inquire about Siebert's litigation strategy.

Days later, Siebert's counsel, upon learning of the interview, moved to disqualify Intuit's attorneys from the case, enjoin them from using any information provided by Dermigny, and stay Dermigny's deposition. Supreme Court granted Siebert's motion, disqualified Intuit's attorneys from the case, ordered the destruction of all notes from their interview with Dermigny, enjoined them from communicating the information they learned during the interview to others, and struck the notice of deposition for Dermigny until such time as Intuit obtained new representation. Supreme Court specifically noted that it was not basing its disqualification determination on DR 7-104 (a) (1) of the Code of Professional Responsibility (22 NYCRR 1200.35 [a] [1]),* acknowledging that the rule did not apply because Dermigny was not a Siebert employee at the time of the interview. Rather, Supreme Court held that the disqualification of Intuit's attorneys was warranted, regardless of whether they actually received privileged information, because there was an "appearance of impropriety" based upon the possibility that privileged information had been disclosed during the interview.

The Appellate Division reversed, holding that disqualification was not justified because Intuit's attorneys had advised Dermig-

---

* DR 7-104 (a) (1) provides that:
  "(a) During the course of the representation of a client a lawyer shall not:
  "(1) Communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so."

ny not to disclose privileged information and, based on the record, no such information had been disclosed (32 AD3d 284, 286 [1st Dept 2006]). In so holding, the Appellate Division noted that this Court's opinion in *Niesig v Team I* (76 NY2d 363 [1990]) "makes it clear that ex parte interviews of an adversary's former employee are neither unethical nor legally prohibited" (32 AD3d at 285). Pursuant to CPLR 5713, the Appellate Division granted Siebert's application for leave to appeal to this Court and certified the following question: "Was the order of this Court, which reversed the order of Supreme Court, properly made?" We now affirm and answer the certified question in the affirmative.

In *Niesig*, we held that DR 7-104 (a) (1) applies only to certain current employees of a party (*see Niesig*, 76 NY2d at 369). We made clear that ex parte communications with nonmanagerial employees are permitted, but adversary counsel are prohibited from directly communicating with employees who have the power to bind the corporation in litigation, are charged with carrying out the advice of the corporation's attorney, or are considered organizational members possessing a stake in the representation (*see id.* at 374, citing Wolfram, Modern Legal Ethics § 11.6, at 613 [Practitioner's ed 1986]). By so holding, we struck a balance between protecting represented parties from making imprudent disclosures, and allowing opposing counsel the opportunity to unearth relevant facts through informal discovery devices, like ex parte interviews, that have the potential to streamline discovery and foster the prompt resolution of claims (*see Niesig*, 76 NY2d at 370, 372).

The policy reasons articulated in *Niesig* concerning the importance of informal discovery underlie our holding here that, so long as measures are taken to steer clear of privileged or confidential information, adversary counsel may conduct ex parte interviews of an opposing party's former employee. Indeed, there is no disciplinary rule prohibiting such conduct. At the time of the interview, Dermigny no longer had the authority to bind Siebert in the litigation, was no longer charged with carrying out the advice of Siebert's counsel, and did not have a stake in the representation.

We conclude that disqualification of Intuit's attorneys is not warranted merely because Dermigny was at one time privy to Siebert's privileged and confidential information. That does not mean, however, that the right to conduct ex parte interviews is a license for adversary counsel to elicit privileged or confidential

information from an opponent's former employee. Counsel must still conform to all applicable ethical standards when conducting such interviews (*see e.g.* Code of Professional Responsibility DR 1-102 [a] [5] [22 NYCRR 1200.3 (a) (5)]; *Niesig,* 76 NY2d at 376; *see also Merrill v City of New York,* 2005 WL 2923520, *1, 2005 US Dist LEXIS 26693, *3-4 [SD NY, Nov. 4, 2005] [adversary counsel prohibited from asking former employee about privileged communications]; *Wright v Stern,* 2003 WL 23095571, *1, 2003 US Dist LEXIS 23335, *3 [SD NY, Dec. 30, 2003] [adversary counsel must refrain from seeking to elicit attorney-client communications from an opponent's former employee]; ABA Comm on Ethics and Prof Responsibility Formal Op 91-359 [1991] [adversary counsel may interview former employees of an opponent but must disclose their role in the matter and whom they represent, and must not induce former employees to disclose privileged communications]).

In this case, Intuit's attorneys properly advised Dermigny of their representation and interest in the litigation, and directed Dermigny to avoid disclosing privileged or confidential information. They also directed Dermigny not to answer any questions that would lead to the disclosure of such information. Dermigny stated that he understood the admonitions and, on this record, no such information was disclosed. Thus, there is no basis for disqualification.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur.

Order affirmed, etc.