OPINION OF THE COURT
Kenneth R. Fisher, J.
Defendant moves to quash three subpoenas duces tecum issued to: Jeffrey Campbell, a musician employed by the Rochester Philharmonic Orchestra, Inc. (RPO); Patrick Burke, an RPO board member, and Charles R. Valenza, an RPO member. Defendant contends that plaintiff, an attorney in good standing registered to practice in the State of New York, acting pro se, has misused the subpoena power by presenting subpoenas to potential witnesses in connection with this matter with accompanying prewritten draft affidavits which the subpoenas demand the witnesses sign under a threat of contempt. In addition, as to Burke, defendant contends that plaintiff has violated the Rules of Professional Conduct that prohibit counsel from speaking to represented parties without permission of the represented parties’ counsel. Defendant otherwise contends that the subpoenas are irrelevant to the issues raised in this case, do not involve business records, and that the person subpoenaed is not the custodian of the records. As to the allegations concerning Burke, plaintiff contends that, as a party herself, she is entitled to speak to an opposing party. At oral argument, it was clarified that, when the conversation occurred, January 27, 2013, Burke was no longer a member of the board and therefore could not bind defendant corporation within the contemplation of Niesig v Team I (76 NY2d 363 [1990]).
The subpoenas in question must be quashed. This is so for the simple reason that not one of the subpoenas duces tecum issued by plaintiff ask the recipient to produce books, papers or other things. Rather, plaintiffs subpoenas provide documents the subpoena recipient is to return to the court in the guise of a response to the subpoena duces tecum. This court finds that such practice constitutes a misuse of the pro se plaintiff’s subpoena authority and that this practice is not to be countenanced.
A subpoena duces tecum may seek the “production of books, papers and other things.” (CPLR 2301.) “The terms ‘books’ and ‘papers’ have been construed to mean books and papers in existence when the subpoena duces tecum is served; thus, a subpoena duces tecum cannot compel the production of docu *493 ments and. records not in existence at the time the subpoena is served.” (4-2301 Weinstein-Korn-Miller, NY Civ Prac ¶ 2301.05; see Orzech v Smith, 12 AD3d 1150, 1151 [4th Dept 2004] [which states a rule applicable under CPLR 3120 (“party may not be compelled to produce information that does not exist or create new documents”)]; Jonassen v A.M.F., Inc., 104 AD2d 484, 486 [2d Dept 1984] [“the material sought to be discovered must be in existence when requested. The party seeking discovery cannot compel the creation of an otherwise nonexistent writing on the theory that its manufacture may constitute material and necessary evidence”]; Durham Med. Search v Physicians Intl. Search, 122 AD2d 529, 530 [4th Dept 1986] [“It is not the function of CPLR 3120 to require a party to create new documents”]; 6-3120 Weinstein-Korn-Miller, NY Civ Prac ¶ 3120.16 [same].)
The amended statute, CPLR 3120, eased the rules for issuance of subpoenas duces tecum to delete the requirement of prior court approval on the theory that responsible attorneys would not threaten targets with the powerful remedy of contempt unless there was a clear right to production of existing records or things. That the targets now say, as urged by plaintiff, that they willingly signed the draft affidavits is of no moment except to question why the subpoena power was invoked at all to obtain these affidavits. It is the misuse of the subpoena power incorporating the threatened judicial remedy of contempt that is at issue, and the courts must ensure that attorneys do not threaten our citizens with contempt except in the clearest of cases.
For instance, in the case of plaintiffs subpoena duces tecum to Jeffrey Campbell, Campbell is commanded under penalty of contempt to “duly sign and mail the attached affidavit duly executed in front of a notary public together with the exhibit attached thereto (comprising an email you received from David Angus dated January 20, 2013).” Astonishingly, plaintiff commands Campbell to create a paper not in existence, the affidavit, and to return a “record” not produced by Campbell, but supplied to him by plaintiff. This is not permitted, and as each subpoena contains the same provision compelling execution of an affidavit and as the subpoena does not ask the target to produce records in the target’s possession, but instead supplies the purported records as an attachment to the draft affidavit, this is sufficient to quash the subpoenas. (Liberty Mut. Ins. Co. v City of N.Y. Commn. on Human Rights, 39 AD2d 860 [1st Dept 1972], affd 31 NY2d 1044 [1973] [a subpoena may not serve to compel *494 production of documents and records not in existence at the time of service of the subpoena]; Matter of Slipyan [Shapiro], 208 Misc 515, 517 [Sup Ct, NY County 1955] [cited with approval in Liberty Mut. Ins Co., 39 AD2d at 860] [“The purpose of a subpoena duces tecum is to compel the person upon whom it is served to produce, under penalty, documents or records in his possession. It carries no further authority. It may not be used to compel a person to do any affirmative act other than the production of such documents or records as they exist at the time of service of the subpoena. Thus, a person, under a subpoena duces tecum, must produce his books of record, but he cannot be compelled to make entries therein. Neither in the instant case can the witness be compelled to answer the various questions in the questionnaire. ”])
When the court initially questioned the propriety of plaintiffs use of the subpoenas, and again at oral argument, plaintiff maintained that “the affidavits are certifications of business records pursuant to CPLR 3122-a and are proper in connection with subpoenas duces tecum.” (Ms. Buholtz’s email, Jan. 31, 2013, 4:43:03 p.m.) This citation is wholly unavailing. First, the subpoenas do not request production of business records in the target’s possession, but they instead supply by way of an attachment the so-called business records in question and demand that the target sign a testimonial/authenticating affidavit exceeding the matter of the attached “record” itself and providing testimony about the case. None of the prepared affidavits attached to the subpoenas conforms with the itemized certification prescribed in CPLR 3122-a, nor could they given the nature of the so-called records supplied with the subpoenas. None of the targets were operating any business related to the “records” which are the subject of the subpoenas, and therefore none of the targets could be said to have been a possible “custodian” thereof, and this includes Burke who by the time he received the subpoena was only a former officer and director of the RPO. In short, CPLR 3122-a is not any template for the procedure employed by plaintiff, nor is it even remotely applicable in the circumstances.
As a separate matter, attendant to the Burke subpoena, defendant contends that plaintiff, an attorney subject to New York’s Rules of Professional Conduct, violated those rules. Such violation will be discussed below. However, the court is compelled to comment that the conduct surrounding this subpoena and the resulting affidavit is unusual and surprising. It is simply *495 an unknown practice to this court for a plaintiff’s counsel, whether an attorney appearing pro se or not, to place a draft affidavit under cover of a subpoena duces tecum before a former officer and director of a defendant, and under a threat of contempt, compel that person to sign the draft affidavit.
Notwithstanding, the court need not reach this issue or that presented by plaintiff’s reference to Niesig v Team I (76 NY2d 363 [1990]), as the above rationale plainly calls for the granting of defendant’s motion to quash, as well as the motion in limine to suppress, and further that a resolution of these issues in defendant’s favor would not prompt the court to grant the motion to dismiss. The remedy of striking the pleadings is a drastic one, and should be used as a last result. As improper as these subpoenas were, plaintiffs conduct, though serious and deserving of rebuke, does not approach that of Sullivan & Cromwell in Matter of Weinberg (132 AD2d 190 [1st Dept 1987] [on prior appeal, Matter of Beiny (Weinberg), 129 AD2d 126 (1987)]), which resulted in disqualification of counsel but not dismissal or striking of the pleadings.
Defendant’s motion brought on by order to show cause dated February 1, 2013, is granted to the extent indicated, and otherwise denied.