[694 NYS2d 678]

In the Matter of ROBERT H. HARRIS, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, July 26, 1999

## APPEARANCES OF COUNSEL

*Grace D. Moran,* Syosset (*Chris G. McDonough* of counsel), for petitioner.

*Nathaniel M. Swergold,* Cedarhurst, and *Ernest J. Peace,* Mineola, for respondent.

## OPINION OF THE COURT

Per Curiam.

The respondent was served with a petition that contained 13 charges of professional misconduct against him. In his answer, the respondent admitted some of the factual allegations contained in the petition and denied that he was guilty of any professional misconduct. After the hearing, the Special Referee sustained all of the charges against the respondent except Charges Three and Four. The Grievance Committee now moves to confirm the Special Referee's report. The respondent cross-moves to confirm the Special Referee's report insofar as it failed to sustain Charges Three and Four and to disaffirm the report insofar as it sustained the remaining charges.

Charge One alleged that the respondent knowingly submitted two false and fraudulent documents to the Nassau County Police Department with the intent to deceive it, in violation of Code of Professional Responsibility DR 1-102 (A) (2), (4) and (8) (22 NYCRR 1200.3 [a] [2], [4], [8]).

Prior to November 1994, the respondent held a license to carry a concealed firearm that was issued by the Nassau County Police Department based on his partial ownership of a private investigation firm. The respondent held a 5% ownership interest in Esquire Private Investigations, Inc. (hereinafter Esquire Investigations), the remainder of which was owned by Ira J. Furman, the respondent's law partner. In 1994, the respondent and Furman dissolved their law partnership, and the respondent surrendered his interest in Esquire Investigations. As a result, the respondent no longer had a legitimate basis to carry a concealed firearm.

On November 23, 1994, the respondent applied to the Nassau County Police Department to amend his license to carry a concealed firearm based on his need to carry significant sums of cash and negotiable instruments to banks in connection with his law practice. In support of that application, the respondent submitted a letter from Donald J. Hart, vice-president of Bank Leumi, dated November 22, 1994. It stated that the respondent deposited substantial amounts of cash into an account at Bank Leumi and that he might be carrying negotiable instruments to be put in a safe deposit facility. The letter was written at the respondent's request and was known by him to be false and misleading. The respondent also submitted his own

letter dated November 22, 1994, in which he stated that he frequently made substantial cash deposits into accounts at Bank Leumi. The respondent knew that the statements contained in the letter were false and misleading.

Charge Two alleged that the respondent submitted a false and fraudulent document to the petitioner with the intent to deceive it, in violation of Code of Professional Responsibility DR 1-102 (A) (3), (4), (5) and (8) (22 NYCRR 1200.3 [a] [3], [4], [5], [8]).

In or about October 1994, the petitioner received a complaint from Catherine Taylor alleging, in part, that the respondent overcharged for services rendered in connection with an estate matter. In a written response to the complaint dated December 8, 1994, the respondent annexed a document dated June 17, 1993, which he offered as the true billing statement from Esquire Investigations to the respondent's law firm for investigative services in the amount of $1,422.06 in the underlying estate matter. The respondent knew that Esquire Investigations had billed his law firm only $877.56 for investigative services related to the estate. The bill was false and fraudulent and was submitted to deceive the petitioner.

Charge Five alleged that the respondent charged and collected an excessive fee in connection with his representation of Hilda Amiel, in violation of Code of Professional Responsibility DR 2-106 (A) and DR 1-102 (A) (8) (22 NYCRR 1200.11 [a]; 1200.3 [a] [8]).

The respondent was retained to defend Hilda Amiel in connection with criminal art fraud charges. The retainer agreement dated February 4, 1992, provided for a fee of $150,000 until trial and $5,000 per day for the trial. In addition, the respondent received $25,000 to be held in escrow for disbursements.

In February 1992, Hilda Amiel was terminally ill with pancreatic cancer, and she passed away in January 1993. During the period of the respondent's representation of her, the only legal work performed by the respondent's firm was to attend Hilda Amiel's bedside deposition. Because of Hilda Amiel's illness and death, the respondent did not earn the fee paid to him, and he did not repay any of the unearned fee to Hilda Amiel's estate.

Charge Six alleged that Hilda Amiel passed away before trial and before the respondent used the $25,000 being held in escrow for disbursements. Moreover, the respondent failed to

promptly refund the unused portion of the money being held in escrow, in violation of Code of Professional Responsibility DR 1-102 (A) (8); DR 2-110 (A) (3) and DR 9-102 (C) (22 NYCRR 1200.3 [a] [8]; 1200.15 [a] [3]; 1200.46 [c]).

Charge Seven alleged that the respondent demanded and received unearned referral fees without his client's consent, in violation of Code of Professional Responsibility DR 2-106 (A) and DR 2-107 (A) (22 NYCRR 1200.11 [a]; 1200.12 [a]).

In 1992, the respondent received over $1,000,000 to defend Hilda Amiel and to obtain and pay for the defense of three other members of her family (Joanne, Serina and Catherine), all of whom were charged with art fraud in connection with the art business of Hilda Amiel's late husband. The $1,000,000 was placed in escrow. The respondent arranged for Stanley Kopilow to represent Catherine Amiel, Adrianne DiLuzzio to represent Joanne Amiel, and Melvin Roth to represent Serina Amiel. Despite the substantial sum already paid to the respondent, he demanded and received $8,333.33 as a referral fee from Stanley Kopilow. The respondent demanded and accepted the referral fee without full disclosure or client consent.

Charge Eight alleged that the respondent charged and collected an excessive fee in connection with the preparation of two wills for Hilda Amiel, in violation of Code of Professional Responsibility DR 2-106 (A) and DR 1-102 (A) (8) (22 NYCRR 1200.11 [a]; 1200.3 [a] [8]).

In February 1992, the respondent was retained by Hilda Amiel to prepare and execute a will. The respondent prepared a simple will, which was duly executed. It was understood, and Hilda Amiel agreed, that the simple will was to serve her while the respondent prepared a more detailed and comprehensive will. The respondent contacted the law firm of Spizz and Cooper to prepare a more comprehensive will for Hilda Amiel. The will was prepared by Spizz and Cooper, for which they were paid $1,500 from the funds entrusted to the respondent by Hilda Amiel.

On February 28, 1992, the respondent paid himself $5,000 from the funds entrusted to him by Hilda Amiel for services rendered by his law firm in connection with the preparation of the two wills. The $5,000 fee, which the respondent charged and collected prior to the wills being completed, was excessive in light of the services actually rendered.

Charge Nine alleged that the respondent converted to his own use and benefit $10,113.88 in client funds, in violation of

Code of Professional Responsibility DR 1-102 (A) (4) and (8) (22 NYCRR 1200.3 [a] [4], [8]).

Between July and December of 1992, the respondent made multiple purchases of computer hardware, software, and computer-related materials in the amount of $10,113.88 supposedly for the Amiel representation. That sum was taken from the Amiel escrow funds. The aforementioned purchases were actually for the respondent's own benefit.

Charge Eleven alleged that the respondent charged and collected an excessive fee in connection with the conservatorship of Paul Brown, in violation of Code of Professional Responsibility DR 2-106 (A) and DR 1-102 (A) (4) and (8) (22 NYCRR 1200.11 [a]; 1200.3 [a] [4], [8]).

The respondent was the managing partner of the law firm of Schneider, Harris, Harris, and Furman, and a partner of Esquire Investigations. In October of 1993, the respondent was contacted by former Nassau County Supreme Court Justice Henderson Morrison regarding Morrison's appointment as the conservator of Paul Brown, an elderly man who was ultimately placed in the A. Holly Patterson Home. Morrison, who was also an elderly man, learned that he would require hospitalization. He contacted the respondent for legal advice and assistance regarding Paul Brown's conservatorship.

To preserve Brown's vacant home, the respondent and Morrison agreed that Esquire Investigations would provide 24-hour guard service. Morrison sent the respondent two checks dated October 22, 1993 and November 29, 1993, respectively, in the amount of $11,000 each for the purpose of paying Esquire Investigations for the guard services. The checks were payable to the respondent's law firm, as attorneys. The respondent deposited both checks into his escrow account.

The respondent, as a principal of Esquire Investigations, had bills prepared that were submitted to the respondent's law firm and that were paid at the respondent's direction and with his knowledge. The respondent knew that the bills submitted and paid included services not actually provided by Esquire Investigations.

Charge Twelve alleged that the respondent converted $3,000 from his escrow account, in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (8) (22 NYCRR 1200.3 [a] [4], [8]).

The respondent was retained to represent the conservator, Henderson Morrison, in the Brown matter in litigation pend-

ing in the Supreme Court, Nassau County. For services rendered in that action, the respondent sought payment of his legal fees in a motion that he made on behalf of the conservator. The motion was denied by the Supreme Court, Queens County (Kassoff, J.), in a decision dated April 14, 1994. By an order dated July 11, 1994, the Supreme Court reiterated its determination that the respondent not be paid at that time and struck the respondent's proposed paragraphs of the order authorizing legal fees. On July 15, 1994, the respondent removed $3,000 from his escrow account in direct violation of Justice Kassoff's decision and order.

Charge Thirteen alleged that the respondent communicated with parties whom he knew to be represented by an attorney about the subject matter of their representation, in violation of Code of Professional Responsibility DR 7-104 (A) (1) and DR 1-102 (A) (8) (22 NYCRR 1200.35 [a] [1]; 1200.3 [a] [8]).

From January 1996 on, the respondent represented a client in a disciplinary action brought by the Malverne School District. In November 1996, the respondent knew or should have known that the School District, its Board, officers, and responsible employees were represented by Terence O'Neil of the law firm of Rains and Pogrebin. On November 26, 1996, the respondent telephoned the President of the Malverne Board of Education, Marguerite O'Connor, about the disciplinary action in which she was represented by O'Neil. On November 27, 1996, the respondent had at least one telephone conversation with Dr. Anthony Pecorale, Interim Superintendent of Schools, about the disciplinary action in which he was represented by O'Neil. On November 28, 1996, the respondent met with Dr. Pecorale, at the respondent's request and at the respondent's office, to discuss the disciplinary action in which Dr. Pecorale was represented by O'Neil. At no time did the respondent request or receive permission from O'Neil, or the law firm of Rains and Pogrebin, to communicate with their clients.

Based on the evidence adduced at the hearing, Charges One, Two, Five, Six, Eight, Nine, Eleven, Twelve, and Thirteen are sustained in their entirety, and Charge Seven is sustained insofar as it alleges that the respondent demanded and accepted a referral fee from Stanley Kopilow without full disclosure or client consent. Charges Three, Four, and Ten are not sustained.

In determining the appropriate measure of discipline to impose, the respondent asks the Court to consider that the charges against him arose out of information provided by his

former law partner who, in effect, had been fired from the firm by the respondent. The respondent also asks the Court to consider the testimony of his character witnesses and his numerous academic, professional, and community service activities.

The respondent's prior disciplinary history consists of three letters of caution and one letter of admonition for charging excessive fees, for giving an unlawful gratuity to a corrections officer, and for utilizing a nonrefundable retainer agreement.

Under the totality of the circumstances, the respondent is disbarred.

BRACKEN, J. P., S. MILLER, O'BRIEN, RITTER and SULLIVAN, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report and the respondent's cross motion to confirm in part and disaffirm in part the Special Referee's report are determined as follows: Charges One, Two, Five, Six, Eight, Nine, Eleven, Twelve, and Thirteen are sustained in their entirety, Charge Seven is sustained insofar as it alleges that the respondent demanded and accepted a referral fee from Stanley Kopilow without full disclosure or client consent, and Charges Three, Four, and Ten are not sustained; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Robert H. Harris, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that Robert H. Harris shall comply with this Court's rules governing the conduct of disbarred, suspended and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that, pursuant to Judiciary Law § 90, Robert H. Harris is commanded to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.