[722 NYS2d 623]

Scott M. Schmidt et al., Respondents, v State of New York, Appellant. (Claim No. 98418.)

Fourth Department, December 27, 2000

## APPEARANCES OF COUNSEL

*Eliot Spitzer, Attorney General,* Albany (*Michael S. Buskus* of counsel), for appellant.

*Ellis & Kustell,* Buffalo (*Carl B. Kustell* of counsel), for respondents.

## OPINION OF THE COURT

SCUDDER, J.

Defendant contends on appeal that the Court of Claims erred in refusing to preclude claimants' use of statements obtained from employees of the New York State Department of Transportation (DOT) at the behest of claimants' counsel, allegedly in violation of Code of Professional Responsibility DR 7-104 (a) (1) (22 NYCRR 1200.35 [a] [1]). Defendant also contends that the court erred in refusing to preclude claimants from deposing the employees who made the statements and to disqualify claimants' counsel based on the alleged violation of the disciplinary rule. We conclude that the court properly denied defendant's motion seeking that relief.

## I

In June 1996 claimant Scott M. Schmidt was seriously injured in a motor vehicle accident at an intersection controlled by a traffic signal installed and maintained by the DOT. In September 1996 claimants served on the Attorney General a notice of intention to file a claim, alleging that the accident was caused by a faulty traffic signal. By serving that notice, claimants thereby extended the time in which to file their claim (*see,* Court of Claims Act § 10 [3]). In May 1998 an investigator employed by claimants' counsel interviewed the four-person crew that had repaired the signal on the day of the accident. In June 1998 claimants filed and served a claim alleging that the signal crew's failure to align the signal properly after repairing it caused the accident.

Claimants thereafter disclosed the statements taken from the four DOT employees, and claimants alleged in their bill of particulars that the negligence of those employees caused the accident. The statements are not included in the record on appeal, but defendant has characterized them as statements of what the signal crew "did and observed on the day of the accident." In moving, *inter alia*, to preclude the use of the statements and to disqualify claimants' counsel, defendant contended that, by contacting the employees without the permission of the Attorney General, claimants' counsel violated DR 7-104 (a) (1) as that rule was interpreted in *Niesig v Team I* (76 NY2d 363). Claimants contended in opposition to the motion that the Attorney General had not established an attorney-client relationship with the DOT or those employees at the time the interviews were conducted, and that claimants were entitled to conduct an investigation to determine whether they had a viable claim.

In denying the motion, the court determined that the disciplinary rule was not violated because the employees were not represented by the Attorney General at the time the interviews were conducted. We conclude that the service of the notice of intention did not trigger representation of the DOT by the Attorney General. Furthermore, even if we were to agree with defendant that there was an attorney-client relationship by the time of the interviews, we would nevertheless conclude that claimants' counsel is not chargeable with knowledge that the employees were "parties" or that they were represented by the Attorney General.

## II

We begin our analysis with an examination of the disciplinary rule and *Niesig*. DR 7-104 (a) (1) provides in pertinent part that "[d]uring the course of the representation of a client a lawyer shall not * * * [c]ommunicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so." In *Niesig*, the Court of Appeals considered the implications of that rule when it is invoked in litigation. The plaintiff in that case moved after commencement of the action for an order permitting his counsel to conduct a private interview with those employees of a corporate third-party defendant who witnessed the accident. The Court held that the motion was properly granted because

none of the employees was a "party" within the meaning of DR 7-104 (a) (1). The Court construed the term "party" as it is used in that disciplinary rule "to include corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation's 'alter egos') *or imputed to the corporation for purposes of its liability*, or employees implementing the advice of counsel" (*Niesig v Team I, supra*, at 374 [emphasis added]) and to exclude "employees who were merely witnesses to an event for which the corporate employer is sued" (*Niesig v Team I, supra*, at 375).

## III

On appeal it is not disputed that the employees in question are in fact "parties" as that term is defined in *Niesig* because they are employees whose acts or omissions may be imputed to defendant for purposes of its liability (*see, Niesig v Team I, supra*, at 374; Assn of Bar of City of NY Comm on Prof and Judicial Ethics Opn 1991-4). This case, however, presents an issue not addressed by *Niesig*, i.e., the point at which a governmental party is in fact "represented by a lawyer in [a] matter" for purposes of triggering the ethical restraints of DR 7-104 (a) (1). Technically, the State of New York is always represented by counsel (*see*, Executive Law § 63 [1]; *see also*, Note, *DR 7-104 of the Code of Professional Responsibility Applied to the Government "Party,"* 61 Minn L Rev 1007, 1029). "However, 'if a governmental party were always considered to be represented by counsel for purposes of [DR 7-104 (A) (1)], the free exchange of information between the public and the government would be greatly inhibited'" (NY St Bar Assn Comm on Prof Ethics Opn 652 [1993]).

Here, the Court of Claims determined that, until the Attorney General actually speaks to, or corresponds with, the employees involved or provides them with privileged information about the case, the employees are not "represented by a lawyer in [the] matter," notwithstanding that they may be "parties" for purposes of DR 7-104 (a) (1). Although we decline to define the precise event that triggers representation because the facts will vary from case to case, we conclude that the court properly rejected defendant's contention that, for purposes of DR 7-104 (a) (1), the Attorney General commenced his representation of the DOT, including the employees at issue, when claimants served their notice of intention. In our view, the notice of intention serves two purposes: it extends the time for claimants to file a claim from 90 days to two years from the ac-

crual of the claim (*see,* Court of Claims Act § 10 [3]; *Hodge v State of New York,* 213 AD2d 766, 767) and it enables the State to conduct a prompt investigation of a possible claim in order to ascertain the existence and extent of the State's liability (*see, Sega v State of New York,* 246 AD2d 753, 755, *lv denied* 92 NY2d 805). To conclude that the service of a notice of intention triggers the Attorney General's representation would not serve either purpose. Indeed, to so conclude would potentially preclude the investigation of a possible claim by claimants' counsel once a notice of intention is served, in order to avoid violating DR 7-104 (a) (1).

## IV

A second issue not addressed by *Niesig,* and a further basis for the Court of Claims' denial of defendant's motion, concerns the issue of knowledge, i.e., whether claimants' counsel knew or should have known that the employees at issue were parties who were represented by the Attorney General at the time the interviews were conducted. The restrictions set forth in DR 7-104 (a) (1) apply only to communications "with a party the lawyer knows to be represented by a lawyer in that matter." DR 7-104 (a) (1) has been held to apply to a lawyer who "knew or should have known" that the party contacted was represented by counsel (*Matter of Harris,* 259 AD2d 170, 175). The Court in *Niesig* wrote: "By preventing lawyers from *deliberately* dodging adversary counsel to reach—and exploit—the client alone, DR 7-104 (A) (1) safeguards against clients making improvident settlements, ill-advised disclosures and unwarranted concessions" (*Niesig v Team I, supra,* at 370 [emphasis added]).

Defendant contends that this is a case in which claimants' counsel ignored the obvious when the employees in question were interviewed at his behest. Defendant contends that, once a notice of intention was served, claimants' counsel should have known that the employees in question were represented by the Attorney General. We disagree.

As the dissent acknowledges, there is no violation of the disciplinary rule unless claimants' counsel knew or should have known that the employees were "employee-parties" under *Niesig* and that the Attorney General represented the DOT. We disagree with the dissent, however, that under these facts claimants' counsel knew or should have known of the employees' status as "parties" and that the employees were represented by the Attorney General by virtue of his representation of the DOT. Unlike the facts in *Niesig,* here there was no pend-

ing action at the time the employees were interviewed; rather, claimants' counsel was conducting an investigation to determine whether claimants had a viable claim against defendant. Certainly, the investigator could have discovered from the employees that the signal had been properly aligned, or that it had been misaligned by a cause unrelated to the signal crew; in fact, the signal had been struck by a tractor trailer prior to repairs made by the signal crew, and a recurrence of such an incident could have caused the misalignment. In that event, there would be no allegation that the disciplinary rule was violated because the actions of the signal crew would not impute liability to defendant.

We further disagree with the dissent's interpretation of the affirmation of claimants' counsel. Although claimants' counsel states therein that he obtained police photographs and other information indicating that the signal was misaligned, he does not state that he had the photographs and other information before the interviews were conducted with the signal crew. He also does not indicate whether he relied upon information that the signal was misaligned in determining that the signal crew should be interviewed, as the dissent maintains, or whether the interviews with the signal crew prompted him to obtain the photographs and other information to confirm that the signal was misaligned. Even assuming, arguendo, that claimants' counsel had the photographs and other information before the employees were interviewed, we cannot conclude that claimants' counsel knew or should have known that the employees were in fact "parties."

Furthermore, although the Attorney General was not obligated to do so, in the 20 months from the service of the notice of intention to the time that the interviews were conducted, he did not advise claimants' counsel that he represented the DOT and that the employees who comprised the signal crew should not be interviewed. The Attorney General is certainly in a better position than claimants' counsel to know which employees are "parties" (*see generally, Niesig v Team I, supra,* at 373); claimants' counsel can only obtain that information through an investigation, as was done here (*see, Niesig v Team I, supra,* at 372-373). To adopt the result proposed by the dissent places claimants' counsel in the untenable position of either conducting an investigation with the risk that an "employee-party" will be interviewed, thereby possibly resulting in a violation of the disciplinary rule, or of commencing an action that ultimately may prove to be without merit so that the investigation of a claim can be conducted through pretrial discovery.

We do not suggest that claimants' counsel may interview anyone, irrespective of counsel's knowledge of the employees' status, simply because a claim has not yet been filed and served. Certainly, DR 7-104 (a) (1) will apply in the event that claimants' counsel knew or should have known that the person interviewed is an employee-party and is represented by counsel, but that is not the case here.

Thus, we conclude that the service of the notice of intention does not trigger representation of a governmental party by the Attorney General. Further, it cannot be said that, at the time of the interviews, claimants' counsel knew or should have known that the employees were "parties," and that they were represented by the Attorney General. Accordingly, the order denying defendant's motion should be affirmed.

WISNER, J. (dissenting and voting to reverse). We respectfully dissent and conclude that the Court of Claims erred in determining that claimants' counsel did not violate Code of Professional Responsibility DR 7-104 (a) (1) (22 NYCRR 1200.35 [a] [1]). This is not a case in which New York State Department of Transportation (DOT) employees are being sued individually for their actions, a distinction that is important under *Niesig v Team I* (76 NY2d 363, 368, n 1). The notice of intention indicated claimants' intent to file a claim against defendant generally, and the DOT in particular. Under *Niesig*, an attorney representing a corporation also—as a matter of law—represents those employees of the corporation who are "parties," as defined by *Niesig*. Unless the same rule applies here, defendant is "effectively read out of the [disciplinary] rule" (*Niesig v Team I, supra*, at 371). Thus, as we see it, the issue is not whether the signal crew members were represented personally by the Attorney General when they were interviewed but whether, at that time, the DOT was represented by the Attorney General. Once that representation is established, it extends for purposes of DR 7-104 (a) (1) to any employee of the DOT who may be considered a "party" under *Niesig*. It is not disputed here that the signal crew members are "parties" under *Niesig*. If it is established that the Attorney General was representing the DOT at the time of the interviews, then in our view the Attorney General was also representing the signal crew members as "parties" for purposes of DR 7-104 (a) (1).

Contrary to the majority, we conclude that the DOT was represented by the Attorney General for purposes of DR 7-104 (a) (1) upon the service of the notice of intention and thus was

so represented 20 months later when the interviews were conducted. The majority examines the purposes of the notice of intention, and concludes that those purposes would not be served by holding that the service of a notice of intention triggers the Attorney General's representation. The focus here, however, should be on DR 7-104 (a) (1), and the purposes that it serves. " 'The general thrust of the [disciplinary] rule is to prevent situations in which a represented party may be taken advantage of by adverse counsel' " (*Niesig v Team I, supra,* at 370, quoting *Wright v Group Health Hosp.,* 103 Wash 2d 192, 197, 691 P2d 564, 567). Those situations may arise before, as well as after, commencement of formal proceedings. Thus, the term "party," as it is used in the disciplinary rule, has been interpreted consistently "to include a person who is a potential litigant" (*United States v Jamil,* 546 F Supp 646, 654, *revd on other grounds* 707 F2d 638; *see,* NY St Bar Assn Comm on Prof Ethics Opn 607 [1990]).

A notice of intention to file a claim against an agency of defendant must set forth "the general nature of the claim with enough detail to enable the State to investigate" (*Ferrugia v State of New York,* 237 AD2d 858, 859; *see,* Court of Claims Act § 11 [b]). It must be served upon the Attorney General (*see,* Court of Claims Act § 11 [a] [i]), who is the "officer responsible for the investigation and litigation of the claim" (*Andriola v State of New York,* 53 AD2d 966, 968, *lv denied* 40 NY2d 803; *see, Matter of Welch v State of New York,* 71 AD2d 494, 496, *lv denied* 50 NY2d 802; *see also,* Executive Law § 63 [1]) and who must ascertain the agency's liability. Claimants here served a verified notice of intention alleging that the accident was caused by a faulty traffic signal that had been installed and maintained by the DOT. Thus, the Attorney General's representation of the DOT with respect to those allegations commenced upon the service of the notice of intention, and the disciplinary rule "safeguards against [the DOT] making * * * ill-advised disclosures and unwarranted concessions" (*Niesig v Team I, supra,* at 370) while claimants, as here, investigate the viability of their claims.

The majority believes that application of DR 7-104 (a) (1) upon service of a notice of intention will preclude a claimant's investigation of a possible claim. We disagree. The need to conduct informal discovery was one of the many competing interests balanced by the Court of Appeals in *Niesig* when it defined the term "party" as it is used in DR 7-104 (a) (1). The test that the Court formulated is equally applicable in a pre-

claim context where a notice of intention has been served. Although DR 7-104 (a) (1) applies to "employee-parties," it does not apply to nonparty employees, including witnesses to the event giving rise to the litigation, and thus those employees may be interviewed informally at any time (see, Niesig v Team I, supra, at 374-375). Furthermore, there are established procedures for conducting pre-claim discovery (see, Court of Claims Act § 17 [2]; CPLR 3102 [c], [f]; see also, Matter of Stewart v New York City Tr. Auth., 112 AD2d 939, 940).

The majority apparently is concerned that, if DR 7-104 (a) (1) is applied in this context, attorneys will forego investigation of claims rather than run the risk of stumbling upon an "employee-party" and violating the disciplinary rule. The rule, however, cannot be violated inadvertently. There is a requirement of knowledge, which implies that the rule is intended to deter purposeful or deliberate misconduct (see, Niesig v Team I, supra, at 370; Wolfram, Modern Legal Ethics § 11.6.2, at 611). This leads us to conclude that an attorney cannot violate DR 7-104 (a) (1) in this context unless that attorney knows not only that the agency involved is represented by the Attorney General, but also that the employees contacted are "employee-parties" under Niesig.

In our view, claimants' counsel knew that the DOT was represented by the Attorney General inasmuch as claimants' service of the notice of intention triggered that representation. Thus, the sole remaining issue is whether claimants' counsel was aware of the status of the DOT employees as "employee-parties" under Niesig. The majority concludes that there is insufficient evidence establishing that element of knowledge. They effectively place the burden on the Attorney General to ascertain who are "employee-parties," and then to provide that information to claimants. We agree that, had the Attorney General done that in this case, there would be no question about the misconduct of claimants' counsel, but that is not to say that without such proof there can be no violation of DR 7-104 (a) (1). The focus here under the disciplinary rule is upon the knowledge of claimants' counsel, not upon the knowledge of the Attorney General.

Contrary to the majority's determination, there is proof that claimants' counsel knew that he was contacting "employee-parties" of the DOT whose acts or omissions he would seek to impute to the DOT. The critical proof of that knowledge was supplied by claimants' counsel in an affirmation in opposition to defendant's motion. In our view, the majority misreads that

affirmation. Police photographs documented the misaligned signal, and DOT records showed that the signal had been knocked down by a truck and then repaired by the signal crew just hours before the accident. Although claimants' counsel did not state explicitly that he had this evidence before the interviews were conducted, the clear implication of his affirmation is that he did. Indeed, that evidence provided the basis for seeking out the members of the signal crew to interview them. Thus, we conclude that, prior to the interviews, claimants' counsel had reason to believe from evidence in his possession that the accident was caused by a misaligned traffic signal and that the signal crew was responsible for that misalignment.

Because in our view claimants' counsel knew, not only that the DOT was represented by the Attorney General, but also that the signal crew members were "employee-parties" under *Niesig*, we would hold that claimants' counsel violated DR 7-104 (a) (1) by interviewing the signal crew members outside the presence of the Attorney General. That is not to say, however, that we would grant the relief requested in defendant's motion. In the absence of significant taint or unfairness, the draconian measures proposed by defendant are inappropriate (*see, S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp.*, 69 NY2d 437, 445). Any remedy should be left to the sound discretion of the court, taking into account "all the significant interests to be balanced" (*S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., supra*, at 444). Accordingly, we conclude that the order denying defendant's motion should be reversed and the matter remitted to the Court of Claims to determine the appropriate remedy.

GREEN, J. P., and KEHOE, J., concur with SCUDDER, J.; WISNER and HURLBUTT, JJ., dissent and vote to reverse in a separate opinion by WISNER, J.

Order affirmed, with costs.