In the Matter of the Estate of EDNA COLEMAN, Also Known as EDNA ELIZABETH COLEMAN, Deceased. EBONY COLEMAN, Also Known as EBONY COLEMAN-HUNLEY, Petitioner; STACY ROBINSON-JONES, Respondent. LEO BEITNER, Nonparty Appellant. [895 NYS2d 122]—

The appellant, Leo Beitner, was employed for many years as chief court attorney of the law department of the Surrogate's Court, Kings County (hereinafter the Law Department). In February 2008, shortly after retiring from government service, Beitner joined Seth Rubenstein, P.C. (hereinafter the Rubenstein firm), a small law firm specializing in estate practice. Prior to Beitner's association, the Rubenstein firm was composed of only two other attorneys, Seth Rubenstein himself (hereinafter Rubenstein) and Nora Anderson. In late November or early December 2006, before Beitner left his employment as chief court attorney, the Rubenstein firm was retained to represent the petitioner in this Surrogate's Court proceeding.

On September 4, 2008, when Rubenstein appeared before the Surrogate's Court, Kings County, on behalf of the petitioner in this proceeding, the Surrogate informed him that this proceeding had initially been referred to the Law Department during Beitner's tenure as chief court attorney. The Surrogate's Court then proceeded, in Beitner's absence, to conduct an inquiry to determine the extent of Beitner's involvement in this proceeding while employed as chief court attorney, and the extent to which he may have subsequently discussed the case with the two other attorneys at the Rubenstein firm. In response to the Surrogate's questions, Rubenstein stated that Beitner had not worked on this case since joining the Rubenstein firm, and that neither Rubenstein nor Anderson had discussed the case with Beitner. When asked by the Surrogate if he were aware that this case "was pending in [that] Court's Law Department" while Beitner was still chief court attorney, Rubenstein replied that he was "not sure that there was anything pending in the Law Department while [Beitner] was its chief."

Three months after the Surrogate conducted the inquiry, in an order dated December 4, 2008, the Surrogate's Court, sua sponte, disqualified Beitner and all other members of the Rubenstein firm from appearing as the petitioner's counsel in

this proceeding. Relying on the prescribed duties of a chief court attorney, as set forth in the title standards promulgated by the Unified Court System, the court found that, during his tenure as chief court attorney, Beitner necessarily would have been required to review every proceeding referred to the Law Department in order to assign it to a subordinate court attorney. The Surrogate's Court reasoned that "[t]his necessary familiarity with each proceeding assigned by [Beitner], without more," was sufficient to create an appearance of impropriety in violation of Code of Judicial Conduct Canon 2 (22 NYCRR 100.2) and Code of Professional Responsibility former DR 9-101 (22 NYCRR former 1200.45), with respect to any matter referred to the Law Department while Beitner served as chief court attorney. The Surrogate's Court further found that since the prescribed duties of a chief court attorney include development of the Law Department's policies and procedures, Beitner would also necessarily have acquired knowledge and information during his employment as chief court attorney that would give him an unfair advantage, in any subsequent litigation, with respect to cases referred to the Law Department during his tenure, again creating an appearance of impropriety. Although the court disqualified Beitner and the Rubenstein firm only from representing the petitioner in the instant proceeding, it further concluded that the appearance of impropriety created with respect to "any estate that was referred to the Law Department while [Beitner] acted as Chief Court Attorney" obviated the "need to question him separately when he appears as private counsel" in any such matter. We disagree with the conclusions reached by the Surrogate's Court, and reverse its order insofar as appealed from.

Preliminarily, we note that it was error for the Surrogate's Court, in disqualifying Beitner and the Rubenstein firm from appearing as the petitioner's counsel in this proceeding, to rely upon Code of Judicial Conduct Canon 2, and case law interpreting that provision (see 22 NYCRR 100.2). The Code of Judicial Conduct contains rules intended to govern the conduct of judges and candidates for elective judicial office, and is, thus, not relevant in determining whether to disqualify an attorney (see 22 NYCRR 100.0 et seq.).

At the time that the court issued its order dated December 4, 2008, the conduct of attorneys in New York State was governed by the Code of Professional Responsibility. That code has now been replaced, effective April 1, 2009, by the New York Rules of Professional Conduct. As relevant to this appeal, both Code of Professional Responsibility former DR 9-101 (b) (1) (22 NYCRR former 1200.45 [b] [1]) and current Rules of Professional

Conduct (22 NYCRR 1200.0) rule 1.11 (a) (2), similarly provide that, where an attorney moves from the public sector to private employment, he or she is disqualified from representing a litigant in a matter in which the attorney *"participated personally and substantially"* as a government employee (rule 1.11 [a] [2] [emphasis supplied]; DR former 9-101 [b]; *see Matter of Stephanie X.,* 6 AD3d 778, 780 [2004]). In an advisory opinion discussing DR former 9-101 (b) (1), the New York State Bar Association Committee on Professional Ethics pointed out that, until 1990, that DR used the phrase "substantial responsibility" in describing the degree of contact which would warrant disqualification of a former government attorney, a standard which did not envision "mere perfunctory approval or disapproval of the matter in question" (NY St Bar Assn Comm on Prof Ethics Op 748 [ 2001]). Rather, the DR contemplated a situation where the former government attorney was "personally involved to an important, material degree, in the investigati[on] or deliberative processes regarding the transactions or facts in question," as was clarified by the 1990 amendment substituting the phrase "personally and substantially" for "substantial responsibility" (*id.*). Furthermore, the comments to rule 1.11 (a) (2) explain that the current rule represents a balancing of interests, and that "the rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government" (ABA Model Rules of Prof Conduct rule 1.11, Comment 4 [2006]) (hereinafter Comment 4).

Contrary to the conclusion reached by the Surrogate's Court, Beitner did not "participate personally and substantially" in every case referred to the Law Department while he served as chief court attorney simply because his stated duties allegedly required him to review every case referred to the Law Department in order to assign it to an appropriate subordinate court attorney. Rather, even if Beitner's position entailed such review, a state of facts which is not established by the record, this responsibility was administrative rather than substantive in nature, did not directly affect the merits of any such case, and did not rise to the level of personal and substantial participation necessary to warrant Beitner's disqualification from appearing as counsel in every such case now that he has left his employment with the court (*see* Comment 4; rule 1.11 [a] [2]; ABA Model Rules of Prof Conduct rule 1.12, Comment 1 [2006]; NY St Bar Assn Comm on Prof Ethics Op 748 [2001]; *cf. Flushing Sav. Bank v Ahearn,* 96 AD2d 826 [1983]).

While there may be cases that were referred to the Law

Department during Beitner's tenure as chief court attorney in which his involvement went beyond administrative review, the Surrogate's Court had no evidence before it that Beitner's involvement, if any, in the instant proceeding was more than administrative.

Furthermore, Beitner's alleged involvement in the development of the Law Department's policies and procedures was not a proper ground for disqualification under DR former 9-101 or rule 1.11 (a) (2). As explained in Comment 4, the disqualification of a former government employee is limited "to matters involving a specific party or parties" (ABA Model Rules of Prof Conduct rule 1.11, Comment 4 [2006]).

Finally, although we agree that it was improper for the Surrogate's Court, sua sponte, to disqualify Beitner and the Rubenstein firm from representing the petitioner, Beitner has not demonstrated that the court cannot fairly and impartially preside over this proceeding. Accordingly, we decline his request to direct that this proceeding and all proceedings in which he represents a party be reassigned to another Surrogate or Justice. Santucci, J.P., Balkin, Eng and Chambers, JJ., concur.