Matter of Abrams Fensterman LLP v People (2025 NY Slip Op 25240)

[*1]

Matter of Abrams Fensterman LLP v People

2025 NY Slip Op 25240

Decided on November 6, 2025

Supreme Court, New York County

Morales-Minerva, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on November 6, 2025
Supreme Court, New York County

In the Matter of the Application of Abrams Fensterman, LLP, Petitioner, 
 To Quash Subpoena, Pursuant to CPLR § 2304,

against
The People of the State of New York, by Letitia James, 
 Attorney of the State of New York, Respondent.

Index No. 453019/2024

Abrams Fensterman, LLP, Brooklyn, New York (Alyssa A. Friedman, of counsel), for petitioner.
People of the State of New York, by Letitia James, Attorney of the State of New York, New York, New York, (Assistant Attorney Generals: Glenna Goldis, Esq., Christopher McCall, Benjamin Fishman, Esq., and Laura J. Levine, Esq., of counsel), for respondent.

Emily Morales-Minerva, J.

In this special proceeding, pursuant to CPLR § 2304, petitioner ABRAMS FENSTERMAN, LLC, moves, by notice of motion (seq. no. 02), for an order disqualifying Sarah Rosenthal, an assistant attorney general (AAG) of Letitia James, Attorney of the State of New York (NYAG), from participating in NYAG's civil investigation of petitioner's debt collection practices (see generally New York State Court Electronic Filing System, [NYSCEF] Doc. No. 75, decision and order, dated October 24, 2025 [providing background on NYAG's inquiry]).[FN1]

In support of this application, petitioner relies on rule 1.11 (d) (2) of the Rules of Professional Conduct.[FN2]
NYAG appears and submits written opposition.[FN3]

For the reasons set forth below, the court denies petitioner's motion entirely.
ANALYSIS
It is well-settled that "jurisdiction to discipline an attorney for misconduct is vested exclusively in the Appellate Division" (Erlanger v Erlanger, 20 NY2d 778, 779 [1967]). However, "disqualification in a particular matter should be sought in the court in which the action is pending or, if [as here] no action is pending, at a Special Term of the Supreme Court" (id.). 
The Code of Professional Conduct is "essentially the legal profession's document of self-governance, embodying principles of ethical conduct for attorneys as well as rules for professional discipline" (Niesig v Team I, 76 NY2d 363, 369 [Judith A. Kaye, Ch. J.] [1990] [discussing the former Code of Professional Responsibility]). Yet, while of undeniable importance and respect, the Code is "not a statute" (Niesig, 76 NY2d at 369). It is well-settled that neither "opinions of the New York State Bar Association Committee on Professional Ethics" —nor the Code of Professional Conduct upon which they are based—"have the effect of law" (People v Herr, 86 NY2d 638, 641 [Howard Levine, J.] [1995] [discussing the code formerly known as Code of Professional Responsibility]).
The distinction between the Code and the rule of law "is particularly significant when a disciplinary rule is invoked in litigation, which in addition to matters of professional conduct by attorneys, implicates the interests of nonlawyers" (Niesig, 76 NY2d at 369 [citation omitted]; see also Herr, 86 NY2d at 642; People v Addimando, 197 AD3d 106 [2d Dept 2021] [citing the same principle]). Courts should "look to the rules as guidelines to be applied with due regard for the broad range of interests at stake" (Herr, 86 NY2d at 642).
"Generally, a violation of the Rules of Professional Conduct, while relevant to the issue whether [an] attorney's continued participation will taint a case, is not, in and of itself, sufficient [*2]to warrant disqualification" (Selim v Castillo, 2023 NYLJ LEXIS 2107, *22 [Sup Ct Bx Cnty 2023] [involving a motion seeking petitioner Abrams Fensterman, LLP's disqualification on the basis of alleged violations of the disciplinary rules], quoting Harris v Erie Cty. Med. Ctr. Corp., 175 AD3d 1104, 1106 [4th Dept 2019]). "Disqualification often turns on whether the conduct complained of results in actual, or a reasonable probability of unauthorized disclosure of confidential information" (Roberts v. Corwin, 118 AD3d 571, 573 [1st Dept 2017]).
Further, "[a] court may intervene to disqualify an attorney only under limited circumstances" (Schumer v. Holtzman, 60 NY2d 46, 54-55 [1983]), and disqualification rests with the discretion of the court (see generally Cardinale v Golinello, 43 NY2d 288, 292 [1977] ["There was no abuse of discretion" when the courts below held that counsel was disqualified]). 
"The party seeking to disqualify a law firm or an attorney bears the burden to show sufficient proof to warrant such a determination" (Koumantaros v. Hephaistos Developing, LLC, 203 AD3d 907, 908 [2d Dept 2022] [citations omitted]).
Here, petitioner invokes rule 1.11 (d) (2) of the Rules of Professional Conduct in support if its motion to disqualify Assistant Attorney General Sarah Rosenthal (AAG). Rule 1.11 (d) (2) states, in applicable part:
"Except as law may otherwise expressly provide, a lawyer currently serving as a public officer or employee shall not:
. . .
"participate in a matter, unless under applicable law no one is (or by lawful delegation may be) authorized to act in the lawyer's stead in the matter, if the lawyer . . . participated personally and substantially in the matter while in private practice or nongovernmental employment"
(22 NYCRR § 1200.00). The term "matter" as set forth in the rules "includes any litigation, judicial or administrative proceeding, case, claim, application . . . investigation . . . or any other representation involving a specific party or parties" (id. rule 1.0 [l] [emphasis added]).
As guidance, the comment section to rule 1.11 recognizes that paragraph (d) refers to the obligation of a government-employed lawyer "toward a former government or private client" (Rules of Prof Conduct [22 NYCRR 1200.0] rule 1.11 Comment [2] [emphasis added]). Further, the comment elaborates that the obligation to a former client does not attach "to all substantive issues on which the lawyer worked" (id., Comment [4]).
Considering if a governmental lawyer should be disqualified for participating in a former matter outside the confines of rule 1.11 (d), the New York State Court of Appeals has found "disqualification is required when there is a 'risk of prejudice attendant on the abuse of confidence'" (People v Herr, supra, 86 NY2d at 641, quoting People v Shinkle, 51 NY2d 417, 421 [1980]). Key to the disqualification analysis appears to be "preventing situations in which former clients must depend on the good faith of their former lawyers turned adversaries to protect and honor confidences shared during the now extinct relations" (id.).
Applying these principles here, the court finds no grounds for disqualifying AAG from assisting NYAG in a pending civil investigation of petitioner's debt collection practices involving nursing home admissions agreements. Petitioner highlights an action where AAG represented two third-party defendants against a plaintiff nursing home that petitioner represented as counsel. There, AAG provided limited-scope pro bono services to the extent of drafting an answer.
Petitioner characterizes this bespoke representation as AAG having "previously [*3]represented parties who were adverse to the Petitioner" Abrams Fensterman LLP (see NYSCEF Doc. No. 67, reply memorandum of law, at 6 [emphasis added]). However, such framing is inaccurate and unduly personalized. 
Counsel were advocates representing opposing parties, not opposing parties themselves. Suggesting animus where none inherently exists appears tenuous. Further, even if petitioner and AAG were opposing parties in said action — which they were not — such posture, without more, would not make AAG privy to confidences or secrets of petitioner's law firm.
Petitioner also highlights AAG's prior role at New York Law Assistant Group (NYLAG). At NYLAG, AAG supervised attorneys representing third-party defendants in matters where nursing homes sued them, pursuant to admissions agreements. However, petitioner did not represent those plaintiffs or any parties therein.
Contrary to petitioner's contention, this supervision, even in combination with AAG's pro bono work, does not substantiate a finding that AAG harbors any personal or institutional bias toward ABRAMS FENSTERMAN, LLP, or it's nursing home clients. To infer such bias or impropriety solely from an attorney's area of specialization would gratuitously conflate expertise with partiality.
Further, if concentration in a particular field of law was sufficient to suggest bias, aspiring assistant attorney generals would be discouraged from developing specialties. Consequently, NYAG's capacity to recruit experienced attorneys equipped to manage complex matters of public concern may also unjustifiably suffer.
In this way, petitioner's argument seems counter to the principle set forth in Matter of Coleman (69 AD3d 846, 849 [2d Dept 2010), upon which petitioner relies. There, the Second Department stated: "rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government" (Coleman, 69 AD3d at 849 [citation omitted])
To the extent that petitioner relies on Green v City of New York (2011 US Dist LEXIS 62089 [SDNY 2011]) to support AAG's disqualification, such reliance is also misplaced. Green involved a private lawyer, who previously represented the City of New York (the City) and certain Department of Corrections (DOC) employees in a class action lawsuit that challenged the lawfulness of strip-searches in DOC facilities. Said lawyer subsequently filed suit against the City and DOC on behalf of a private client alleging her unlawful strip-search in their custody (id.). Determining disqualification was appropriate, the federal court found compelling the lawyer's acquisition — as former government counsel — of "confidential information on how strip-searches of detainees and others work[ed] in actual practice" (id. at 6).
Here, none of petitioner's allegations implicate AAG's access to, or acquisition of, petitioner's confidential or secret information. Further, in the event AAG had such access — which is only speculated on this record — there would be no risk of prejudice attendant on an abuse of confidence. Their professional relationship, as opposing counsel on one matter, did not entail the same, if any, expectation of mutual trust or confidentiality that exists between a former client and counsel.
Similarly unavailing is plaintiff's reliance on Telsaint v City of New York (2024 NY Misc LEXIS 3811 [S Ct Kings Cnty 2024]). There, the issue of disqualification arose between a party seeking disqualification of its adversary's counsel because said counsel previously represented the party. Again, disqualification was warranted given the former client's exposure of confidential information. No level of such exposure has existed between petitioner and AAG, [*4]who interacted, if at all, as counsel in the context of AAG drafting an answer. Indeed, petitioner does not identify one person at its law firm who engaged with AAG in any litigation.
Finally, NYAG's civil investigation of petitioner is in the preliminary stage; no findings have been issued and no litigation has been commenced. Therefore, petitioner's application to disqualify AAG based on harm or prejudice appears premature.
Accordingly, it is
ORDERED that petitioner ABRAMS FENSTERMANN, LLP's motion (seq. no 02) to disqualify an assistant attorney general is denied; it is further
ORDERED that petitioner shall serve NYAG with this decision and order with notice of entry on or before November 10, 2025; and it is further
ORDERED that the Clerk of the Court shall mark the file accordingly.
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
DATED: November 06, 2025
Hon. Emily Morales-Minerva, J.S.C.

Footnotes

Footnote 1:Pursuant to CPLR § 2304: "If (a) subpoena is not returnable in a court, a request to withdraw or modify the subpoena shall first be made to the person who issued it and a motion to quash . . . may thereafter be made in the supreme court"] [emphasis added]; see also Patrick M. Conners, Prac Commentaries, McKinney's Cons Laws of New York, CPLR C2304: 5 ["CPLR 2304 says explicitly that the application shall be by 'motion.' If the subpoena is returnable in a court, the main procedural steps for the motion to quash are well prescribed by the CPLR; . . . But when a motion to quash a subpoena [is not returnable in court] . . . there is no existing judicial context to house the motion . . . (and, for purposes of jurisdiction, it is) best to commence a special proceeding against the one who issued the subpoena"]).

Footnote 2:Rule 1.11 (d) of the Rules of Professional Conduct states, in pertinent part:

"Except as law may otherwise expressly provide, a lawyer currently serving as a public officer or employee shall not: (2) participate in a matter, unless under applicable law no one is (or by lawful delegation may be) authorized to act in the lawyer's stead in the matter, if the lawyer . . . participated personally and substantially in the matter while in private practice or nongovernmental employment."

Footnote 3:Preliminarily, NYAG argues that petitioner has no "standing" to bring this motion. However, as NYAG does not set forth or apply the standing doctrine in its analysis, the Court rejects this argument as unsupported.